[Civ. No. 57769. Second Dist., Div. Four. Dec. 23, 1980.]

JO ANNE DAVIS, Plaintiff and Respondent, v.
CHARLES E. THAYER, JR., et al., Defendants and Appellants.

894

Taylor, McCord & Paul and Robert L. McCord, Jr., for Defendants and Appellants.

King & Skeels and C. Russell King for Plaintiff and Respondent.

OPINION

LAIDIG, J.*—This is an appeal from an order denying a motion to set aside an entry of default and a judgment predicated thereon.

On September 28, 1978, plaintiff and respondent, Jo Anne Davis, filed a complaint for restitution and damages against Charles E. Thayer and his mother Eileen D. Willette, defendants and appellants, doing business as Camarillo Gold & Silver Exchange, a partnership. The complaint, which concerned the sale of a partial interest in a contract for the purchase of gold, alleged that defendant Thayer had made nu-

*Assigned by the Chairperson of the Judicial Council.

merous false representations to plaintiff, without any intention of performance. In addition to rescission and recovery of the $20,000 she had invested in the contract, plaintiff alleged that she was entitled to punitive damages in the sum of $50,000 because defendants had acted with oppression, fraud, and malice.

Defendant Thayer was served with summons and complaint on September 28, 1978, while present at the Ventura County Municipal Court for arraignment on felony charges, one of which related to the claim of plaintiff in this action. Defendant Willette was served with summons and complaint on October 2, 1978, at her home in Santa Maria, California.

On November 2, 1978, each defendant was served by mail with a copy of a request for entry of default. One envelope was addressed to Willette at her home in Santa Maria where she had been served with the summons and complaint. The other was addressed to Thayer, in care of Willette, at the same address. Neither of the defendants entered an appearance and on November 3, 1978, defaults were entered as to each defendant.

On November 29, 1978, after hearing, the trial court granted judgment on the third cause of action (grounded on fraud and deceit) for $20,000 actual and $50,000 punitive damages.

On May 4, 1979, the defendants filed a notice of motion to set aside their defaults and the default judgment rendered against them. The motion was considered and orally denied by the court on June 18, 1979.

On July 3, 1979, a formal order signed by the trial judge stated that the motion "is, denied, on the sole ground that defendants' motion, filed May 4, 1979, exceeded by one day the six month limit authorized under CCP §473."

The motion to set aside the default did not allege any grounds but recited that it would be based upon the declarations of defendants Thayer and Willette, "the attached points and authorities, and such other evidence, both oral and documentary, to be presented at the time of said hearing." No oral evidence was actually presented at the hearing.

The declaration of defendant Thayer submitted in support of the motion recited that the defendant Willette was his mother "who was

engaged in business with me and doing business as Camarillo Gold & Silver....I was the person solely responsible for conducting the affairs of Camarillo Gold & Silver including any legal matters that arose during the course of that business."

Thayer further alleged that he received a copy of the summons and complaint in the matter on September 28, 1978, and, "5. I was personally served with these documents when I was being arraigned in the Ventura County Municipal Court on multiple felony charges, one of which is related to the claim of Jo Ann Davis, the plaintiff in this case.

"6. I did not know how to answer the complaint personally since I am not an attorney. I did not have the funds with which to hire an attorney to help me on the civil matter since everything I had left had to be used to hire an attorney to defend me against the criminal charges.

"7. I spoke to my mother, Eileen Willett, who was also served with a copy of the complaint, and she left the entire matter to me.

"8. I did not file an answer to the complaint because I did not have the money to do so, and because my primary concern was over what would happen on the criminal matters."

Thayer took no steps to preserve his rights until "March or April 1979" when he spoke to Attorney Robert L. McCord, Jr.

Thayer further stated: "9. It [sic] was then advised that Ms. David [sic] had a judgment against me for Twenty Thousand Dollars ($20,000.00) on the loan agreement, plus had been awarded punitive damages for Fifty Thousand Dollars ($50,000.00) because of a supposed fraud.

"10. I was genuinely shocked at this disclosure. I owed Ms. Davis the Twenty Thousand Dollars ($20,000.00) and had paid her interest until I began to have financial difficulties, however, I had never defrauded her nor did I ever intend to do so. I did not have the money to defend the matter and since I owed her Twenty Thousand Dollars ($20,000.00) I felt it was prudent merely to allow her to obtain her judgment. I did not realize she was also claiming damages for fraud. Had I known this fact, I clearly would have made an effort to prevent the default against my mother and I. There has never been any intent to cheat or defraud Ms. Davis.

"11. In March or April of 1979, I asked Mr. McCord if I could have the judgment set aside. I was told then that the loan agreement was usurious and probably not enforceable but it would be difficult to set aside because the criminal prosecution was then pending, and a statement or affidavit of merit could not be prepared because it might be used against me in some way.

"12. On May 2, 1979, the criminal proceedings were disposed of and I immediately asked Mr. McCord to initiate this motion."

A proposed answer was filed with the motion. It recited that the appearing parties were "Defendants, CHARLES E. THAYER and EILEEN D. WILLETTE, individually and doing business as CAMARILLO GOLD & SILVER," and that defendants admit "they were doing business as Camarillo Gold & Silver."

Defendants also admitted that defendant Thayer executed the loan agreement attached to the complaint as exhibit A and that they owed "the approximate sum of Twenty Thousand Dollars ($20,000.00). . . ." They denied any fraud or false representations and alleged that plaintiff has been paid "the approximate sum of Six Hundred Dollars ($600.00) as and for interest," and that said sum should be set off against any amounts determined to be due.

The answer also included an affirmative defense: "17. That the loan agreement executed by the plaintiff demands that the defendant pay an excessive amount of interest, that said interest rate constitutes usury within the meaning of Section 22, Article 20 of the California Constitution, and Section 1916 of the California Civil Code.

"18. That the loan agreement attached to plaintiff's complaint is usurious, null and void, and therefore unenforceable."

Thayer's declaration was dated May 3, 1979, at Ventura, California. The answer was dated May 4, 1979, at Ventura, California, and verified by Attorney McCord who stated that the parties were absent from the county.

On May 17, 1979, defendant Willette executed a declaration which stated: "1. I am 65 years of age and currently reside at 518 East Tunnel Street, Santa Maria, California.

"2. I do not have any ownership interest in Camarillo Gold & Silver and have never had such an interest...."

She attached to her affidavit, as an exhibit, a fictitious name statement filed with the Ventura County Clerk, September 3, 1974, showing that C. E. Thayer was conducting the business of "Camarillo Gold & Silver Exchange" as a sole proprietorship.

Willette's declaration further stated: "3. As an employee I worked for Camarillo Gold & Silver which was owned and operated solely by my son, Edgar Thayer. I was personally served with papers at my home in Santa Maria in the Davis and Hunt cases.

"4. At the time of service of these papers I was not in any condition, financially or physically, to defend either of the actions. I was then under a doctor's care for a recent heart attack and was taking valium very heavily. I was also caring for my 86 year old mother who was recovering from a corneal transplant, and my husband who was dying of cancer. He died March 31, 1979.

"5. At the time these papers were served my son Charles was out of the state and I did not know where he was. I depend upon him totally, particularly in the last year because of a medical difficulties my husband and I have been having.

"6. When my son returned to California I gave him all of the papers and he advised me he would take care of the problem.

"7. It was not until recently that I learned judgments were entered against me. I was shocked. I was not an owner of Camarillo Gold & Silver and had never represented myself as such.

"8. I did not borrow any money from JoAnne Davis or Afton B. Hunt and I do not owe them any sums of money. I never made any representations to these two individuals concerning business transactions, securities, gold, or any other transactions.

"9. Had I been physically capable and financially able I would have done so. I relied totally on my son to help me but unfortunately he too was having great difficulties in his business."

In addition to the documents mentioned above, defendants presented an original and a supplemental memorandum of points and authorities. None of the documents recites the "grounds" for the motion to set aside the default. However, the points and authorities state that the relief is being sought under section 473 of the Code of Civil Procedure. The order of the trial court denying the motion states that the court considered only relief under section 473.

In pertinent part, section 473 of the Code of Civil Procedure provides that a court may: "... upon such terms as may be just, relieve a party or his legal representative from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect. Application for such relief must be accompanied by a copy of the answer or other pleading proposed to be filed therein, otherwise the application shall not be granted, and must be made within a reasonable time, in no case exceeding six months, after such judgment, order or proceeding was taken; ..."

### TIMELINESS OF THE MOTION

The first question we must consider is whether or not the motion was filed within the time permitted.

The statutory period commenced to run November 3, 1978, when the entry of default was made as to each defendant. (*Northridge Financial Corp.* v. *Hamblin* (1975) 48 Cal.App.3d 819, 825 [122 Cal.Rptr. 109]; *Weiss* v. *Blumencranc* (1976) 61 Cal.App.3d 536, 541 [131 Cal.Rptr. 298]; 5 Witkin, Cal. Procedure, Attack on Judgment in Trial Court, § 151, p. 3726.)

Section 12 of the Code of Civil Procedure provides: "The time in which any act provided by law is to be done is computed by excluding the first day, and including the last, unless the last day is a holiday, and then it is also excluded." (To the same effect, see § 10 of the Civ. Code and § 6800 of the Gov. Code.)

Section 6803 of the Government Code provides: "'Year' means a period of 365 days; 'half year,' 182 days; 'quarter of a year,' 91 days. The added day of a leap year, and the day immediately preceding, if they occur in any such period, shall be reckoned together as one day."

Section 6804 of the Government Code provides: "'Month' means a calendar month, unless otherwise expressed." (To the same effect, see Civ. Code, § 14, subd. 4 and Code Civ. Proc., § 17, subd. 4.)

Defendants contend that the six-month period provided by section 473 commences on the first day *following* the entry of default because that section "provides that the motion *must be filed after* the entry of default...." (Italics added.) They conclude that the computation thus commences the day following the entry of default. Defendants cite *Ziganto* v. *Taylor* (1961) 198 Cal.App.2d 603, 607 [18 Cal.Rptr. 229]: "It is a generally accepted rule that in the computation of a period of time 'from and after' a day, date, act or event, such day or the date of such act or event is excluded and the computation of time is commenced on the following day. [Citations.]"

The default in question was entered November 3, 1978. Defendants argue that the first day after such entry was November 4, 1978, and that, therefore, the final day in the six-month period on which the motion might be filed was May 4, 1979. They contend that a statute which deals with filing proceedings no later than a certain time "after" (as Code Civ. Proc., § 473) the occurrence of an event should be construed differently than one requiring the filing of the proceeding "within" a certain time of the occurrence. They cite as an example, *Wixted* v. *Fletcher* (1961) 192 Cal.App.2d 706, 707 [13 Cal.Rptr. 734], in which the court held that an action for personal injuries filed February 5, 1960, is "within" the one-year limitation as to an injury occurring February 5, 1959, and not barred by section 340, subdivision 3, of the Code of Civil Procedure.

While it may be a strained construction to conclude that the word "after" as employed in section 473 compels the litigant to wait until the day following the default before applying for relief, it is not necessary to decide the issue so presented. The question of timeliness is resolved by section 6803 of the Government Code, above quoted, which states that half a year is 182 days. ■ ■■■■ Since we may take judicial notice of the meaning of all English words (Evid. Code, § 451, subd. (e)), we know that in ordinary usage one year is the equivalent of twelve months and that half a year must be the equivalent of six months.[1]

---

[1]Formerly Civil Code section 14, subdivision 9 provided that "Fractions of a year are to be computed by the number of months—thus, half a year is six months...." (As enacted in 1872. Amended 1873-1874 substantially into its present form, deleting many definitions, including, subdivision 9 above.)

In construing section 473 should we determine that "six months" refers to "half a year," and is within section 6803 of the Government Code, or that it is six "calendar" months under Code of Civil Procedure section 17, subdivision 4, Civil Code section 14, subdivision 4, and Government Code section 6804?

■ Where a statute establishing a time limitation is susceptible of several possible interpretations a liberal rule of construction is applied, and the "...computation of time should be so made as to protect a right and prevent a forfeiture if this can be done without violating a clear intention or a positive statutory provision. As has been said, when the legislature requires a thing to be done within a certain time and deprives a party of a right for omitting to do it, the most liberal construction ought to be chosen and the furthest time given from which the reckoning is to be made." (34 Am.Jur., Limitation of Actions, § 252, p. 207. Cited with approval in *Wixted* v. *Fletcher, supra,* 192 Cal. App.2d at p. 707, fn. 1.)

■ We therefore conclude that as employed in section 473 of the Code of Civil Procedure six months is the equivalent of half a year and, under section 6803 of the Government Code, is the equivalent of 182 days. Let us apply that yardstick to the situation at hand. Under the rule of section 12, Code of Civil Procedure, we must exclude the first day and include the last in our computations. We therefore exclude the first 3 days of November 1978, leaving a balance of 27 days in November. We include 31 days in December 1978; 31 days in January; 28 days in February; 31 days in March; 30 days in April; and 4 days in May 1979, to aggregate a total of 182 days during the period to be considered. Since the 182d day did not expire until midnight May 4, 1979, the motion was timely under section 473 of the Code of Civil Procedure.

Respondent urges that the case of *Troncale* v. *Troncale* (1960) 179 Cal.App.2d 86, 90 [3 Cal.Rptr. 474], should be regarded as foreclosing the contentions of the appellants. In *Troncale* the court made an order

---

We also note that the term "year" may be flexible in meaning in accordance with the context in which it is employed. "Ordinarily, the term 'year,' when used in a statute, means a period of 365 days. But its meaning in all cases is dependent on the subject matter and the connection in which it is used. It may mean a period of 12 months, commencing on a day other than January 1, or it may mean a political year or a period between two elections, a year of office, a school year, a fiscal year or excise year, a year of age, or a theatrical season...." (59 Cal.Jur.3d 317, and authorities there cited.) The term twelve months has often been used interchangeably with one year. (See *United States* v. *Bussey* (S.D.Cal. 1943) 51 F.Supp. 996, 999.)

September 3, 1957. A motion to vacate such order under section 473 of the Code of Civil Procedure was filed March 3, 1958.

With respect to the timeliness of the motion the court in *Troncale* at page 90 stated: "If the period of six months is computed on the basis of 30 days to a month, the last day of the period would be March 2, 1958, which was Sunday. Since Sunday is a holiday (Gov. Code, § 6700), the period of six months would be extended to and including March 3, 1958. (Code Civ. Proc., § 12a; *Bell* v. *Krauss*, 169 Cal. 387, 391-392. . . .) If the period of six months is computed on the basis of a calendar month, the last day of the period would be March 3, 1958. Under either method of computation, it appears that March 3 was the last day of the period of six months. Since the notice of motion was filed on that day, it was filed within the six months, and the court had jurisdiction to grant the motion."

*Troncale* merely determined that under the two approaches therein considered, March 3, 1958, was the last day of the period of six months. Section 6803 of the Government Code is not discussed or considered in the opinion. *Troncale* cannot therefore be considered as authority to deny the application of 6803 to the case at hand.

## Was There Discretion to Grant the Motion?

Having determined there was jurisdiction to entertain the motion for relief under section 473, it now becomes necessary to determine whether there was sufficient evidence to warrant the trial court, in its discretion, to grant relief from default as to either defendant. The record before us includes all the evidence presented to the trial judge. We shall now analyze that record. If it is sufficient to justify the granting of the relief sought, the cause should be remanded with instructions to the trial court to exercise its discretion. If it is insufficient, the order denying relief should be affirmed.

■ A motion for relief under section 473 is addressed to the sound discretion of the trial court and an appellate court will not interfere unless there is a clear showing of an abuse. (*Keller* v. *Keller* (1949) 91 Cal.App.2d 39, 41 [22 P.2d 798].) The statute is remedial and should be liberally applied to carry out the policy of permitting trial on the merits, but the moving party has the burden of showing good cause. (*Ochinero* v. *Wertz* (1962) 200 Cal.App.2d 533, 534 [19 Cal.Rptr. 466]; *Marcotte* v. *Municipal Court* (1976) 64 Cal.App.3d 235, 239

[134 Cal.Rptr. 314]; see also, 5 Witkin, Cal. Procedure, Attack on Judgment in Trial Court, § 128, p. 3703, and authorities therein cited.)

However, the moving party must present a reasonable excuse. "The reasons, and the causes, and the excuses for the inadvertence are the matters which concern the court, and these are not stated. Inadvertence in the abstract is no plea upon which to set aside a default. The court must be made acquainted with the reasons for the inadvertence and, if satisfactory, will act upon them and relieve from burdens caused by them; but, if the inadvertence is wholly inexcusable, as if it arises from gross negligence, the court will not look upon it kindly, and will have none of it." (*Shearman* v. *Jorgensen* (1895) 106 Cal. 483, 485 [39 P. 863]; 5 Witkin, Cal. Procedure, Attack on Judgment in Trial Court, § 154, p. 3728.)

In addition to the declarations of defendants Willette and Thayer to which we have already adverted, the trial court was presented with the declaration of Eugene C. Peck, an attorney for plaintiff, who stated: "I was present when Defendant, CHARLES E. THAYER, JR., was served with a Summons and Complaint herein, and in another suit filed against him by another Plaintiff. In both instances he refused to accept the papers which fluttered to the ground near his feet. I continued to watch him, and about ten minutes later, observed him picking up all of the papers that had been served upon him. This occurred when an attorney that was representing him came upon the scene and told him that he might as well pick up the papers. All of this occurred near the old Court House, outside next to the parking lot in Ventura, California on September 28, 1978.

"Neither Defendant communicated with me at any time after the Summons and Complaint were served or after Plaintiff's Request for Default was served." Neither of the defendants controverted this declaration.

1. *Sufficiency of Thayer's Evidence.*

■ Defendant Thayer advanced several reasons for his failure to file an answer. He stated that he did not have funds, that his primary concern was what would happen in pending criminal charges, that he did not realize that Davis was claiming damages for fraud. "Had I known this fact I clearly would have made an effort to prevent the de-

fault against my mother and I. There has never been any intent to cheat or defraud Ms. Davis."

A cursory examination of the complaint reveals that its gravamen is *fraud*. The first cause of action alleges dealing in an unregistered security, an illegal transaction which plaintiff sought to annul. By the second cause of action plaintiff sought rescission, alleging she was victimized by false and misleading representations that she was losing money in banks, could obtain 26 percent interest in dealing with defendant, "could double" her money, and that she did not have to pay taxes on gold and silver returns. In the third cause of action plaintiff alleged that the defendants induced her to purchase the alleged security for $20,000 cash by deceptive representations and that they were guilty of oppression, fraud, and malice entitling plaintiff to punitive damages of $50,000. The fourth cause of action was for money had and received. The prayer sought recovery of the original payment of $20,000, for interest thereon, less the sum of $600 paid by the defendants, and for punitive damages in the sum of $50,000.

In the face of the repeated allegations of misconduct and fraud, defendant Thayer's statement that he was "genuinely shocked" when he learned an award of $50,000 had been made against him as punitive damages is incredible. If he failed to read the complaint he was guilty of gross negligence. If he did read it and disregarded its allegations he was guilty of careless and indifferent conduct. In either event relief should be denied. (*Paulekas* v. *Paulekas* (1953) 117 Cal.App.2d 73, 77 [254 P.2d 941]; *Caton* v. *Caton* (1955) 131 Cal.App.2d 451, 458-459 [280 P.2d 876]. See also, *Martin* v. *Johnson* (1979) 88 Cal.App.3d 595, 606-607 [151 Cal.Rptr. 816]; *Northridge Financial Corp.* v. *Hamblin, supra*, 48 Cal.App.3d at p. 826; *Security Truck Line* v. *City of Monterey* (1953) 117 Cal.App.2d 441, 446 [256 P.2d 366, 257 P.2d 755].)

His conduct in permitting the matter to go to default was not the result of mistake, inadvertence, or surprise. It was solely the consequence of neglect, a neglect which we find to be inexcusable.

If he had no funds, as he contends, he could have obtained a waiver of the fee by petition in forma pauperis[2] and he could have consulted

[2]We have been referred to no authority for the proposition that poverty permits a defendant to ignore an action filed against him. For a case containing numerous suggestions to an impecunious plaintiff, see *Lowe* v. *Thomas* (1970) 11 Cal.App.3d 867, 870 et seq. [90 Cal.Rptr. 202].

attorneys in legal aid offices or proceeded in propria persona. It appears that he simply decided that the matter did not warrant any attention on his part at that time.

■  The principle is well stated in *Elms* v. *Elms* (1946) 72 Cal. App.2d 508, 513 [164 P.2d 936]: "It is the duty of every party desiring to resist an action or to participate in a judicial proceeding to take timely and adequate steps to retain counsel or to act in his own person to avoid an undesirable judgment. Unless in arranging for his defense he shows that he has exercised such reasonable diligence as a man of ordinary prudence usually bestows upon important business his motion for relief under section 473 will be denied.... The law frowns upon setting aside default judgments resulting from inexcusable neglect of the complainant....

"Where the default occurred as a result of deliberate refusal to act, and relief is sought after a change of mind, the remedy is clearly inappropriate. [Citations.]" (5 Witkin, Cal. Procedure, § 144, Attack on Judgment in Trial Court, p. 3718.)

Thayer does not deny that when served with the papers an attorney who represented him told him to pick them up from the ground to which he permitted them to fall. Surely the matter was discussed to some extent with this attorney.

Approximately one month later Thayer was served notice that entry of his default was being requested. Again he does not mention this circumstance or attempt to refute the proof of service which was in the papers before the trial judge. He knew, or should have known, that judgment would be rendered against him shortly after November 2, 1978, when the request for entry of default was served.

■  Section 587 of the Code of Civil Procedure requires that an application for entry of default include, "... an affidavit stating that a copy of such application has been mailed to the defendant's attorney of record or, if none, to the defendant at his last known address ...." This section, enacted in 1969, was designed to prevent the taking of the default of an unwary litigant, to minimize the possibility that a default might be taken of one who intended to defend on the merits, and to reduce the incidence of motions for relief under Code of Civil Procedure section 473 or under the equity power of the court. (*Slusher* v. *Durrer*

(1977) 69 Cal.App.3d 747, 755 [138 Cal.Rptr. 265]; *In re Marriage of Harris* (1977) 74 Cal.App.3d 98, 101 [141 Cal.Rptr. 333].) These beneficial purposes will be thwarted if defendants are permitted to disregard, with impunity, the notices served pursuant to section 587. In *Ludka* v. *Memory Magnetics International* (1972) 25 Cal.App.3d 316, 321 [101 Cal.Rptr. 615], the trial court stated it was negligence to wait for three months after notice that a request for entry of default had been sent to the court before filing a motion to set it aside. Here defendants waited five months.

Although Thayer does not argue that he was under any disability from the time of service of the papers on September 28, 1978, and until "March or April 1979," he appears to contend that because the lawyer advised him that "a statement or affidavit of merit could not be prepared because it might be used against me in some way," his failure to act promptly after learning of the actual judgment was justified.

Aside from the fact that this belated contact with the attorney occurred beyond any reasonable time as envisioned by the statute, the advice given appears unwarranted. An attorney of average attainments should have been able to draft documents which would not tend to incriminate defendant. The proposed answer and declaration illustrate the point. There is nothing in either of these documents which could not have been proved by evidence which appears to have been readily available and defendant Thayer would have suffered no detriment by admitting all matters so alleged.

Thayer's further statement that the attorney advised him "the loan agreement was usurious and probably not enforceable" also shows a lack of careful attention to the matter. None of the causes of action sought to enforce the agreement. The complaint was based upon the theory that the contract, so called, was unenforceable and that damages, both general and punitive, should be awarded.

Additionally, we are not informed of the date upon which Thayer allegedly discovered that judgment had in fact been rendered against him. This is masked in the statement that he learned of it "in March or April 1979." The trial court was thus prevented from ascertaining whether or not, assuming defendant Thayer had any satisfactory excuse for permitting his default to be entered and that he should not be charged with earlier knowledge thereof, he exercised diligence to set

it aside after "actual" knowledge. He has thus failed to meet the double burden of establishing a satisfactory excuse and diligence in making the motion.[3]

2. *Sufficiency of Willette's Evidence.*

■ With regard to defendant Willette, she, too, is guilty of inexcusable neglect.

Although she stated she was under doctor's care for a heart attack and taking medication at the time of service of the papers, she does not state the severity of the condition or in what manner it limited her activity, nor did she present a doctor's declaration to confirm her statements. Was she truly so disabled that she could do *nothing* concerning this matter for nearly six months? (See *Transit Ads, Inc.* v. *Tanner Motor Livery, Ltd.* (1969) 270 Cal.App.2d 275, 287 [75 Cal.Rptr. 848], in which the court stated in a similar situation a doctor's declaration was desirable to negate unfavorable inferences against the declarant, and that it was an abuse of discretion to grant section 473 relief where the proof with regard to health of the declarant was inconclusive.)

Despite her poor health Willette claims that she was caring for her elderly mother and a dying husband. She does not state that all of her time was devoted to such matters, to the exclusion of other affairs, or that she was too distraught to think of plaintiff's claim. In such circumstances it is the rule that: "... the mere fact that the *client* is busy and occupied with other affairs is never held to constitute an excuse for his neglect to answer a summons within time, although the courts will in a proper case relieve a client from the result of the neglect of his too busy attorney. If the rule were otherwise, few judgments by default would stand, for most men could plead their business as an excuse for not answering the summons of the court." (*Andrews* v. *Jacoby* (1919) 39 Cal.App. 382, 383-384 [178 P. 969]; see 5 Witkin, Cal. Procedure, Attack on Judgment in Trial Court, § 138, p. 3713.)

Willette states she held the papers for an unspecified time and turned them over to her son after he returned from out of the state. He advised

---

[3]For a discussion of numerous cases dealing with the question whether the application was made within a reasonable time after discovery, see 5 Witkin, California Procedure, Attack on Judgment in Trial Court, section 153, page 3727. (See also, *Ludka* v. *Memory Magnetics International, supra,* 25 Cal.App.3d at pp. 321-322; *Northridge Financial Corp.* v. *Hamblin, supra,* 48 Cal.App.3d 819, 824.)

her "he would take care of the problem," a statement which appears unlikely in view of his decision to take no action on his own behalf. We do not know whether the papers were turned over to the son before or after the defendant Willette was served with notice that plaintiff was seeking to have her default entered. It was incumbent upon Willette, seeking the relief in question, to make the sequence of events clear to the court. In addition she does not allege that she ever made any inquiry of her son to ascertain what he had done, an inquiry which would have been highly appropriate in view of the notice that her default had been requested by plaintiff. Because of her admitted employment with Camarillo Gold & Silver Exchange she was presumptively aware of her son's involvement in criminal proceedings as well as in the transaction in question. Should she not have made some inquiry as to whether he was really looking out for her? We feel she should have done so.

Another aspect of Willette's motion should be considered. In her declaration she asserts that the business was solely operated by her son and she was merely an employee, that she borrowed no money from plaintiff. However, the proposed answer states "defendants admit that they were doing business as Camarillo Gold & Silver" and "defendants admit that the approximate sum of Twenty Thousand Dollars ($20,000.00) is owed to the plaintiff...."

Thayer's declaration states he did not realize plaintiff was claiming damages for fraud, "Had I known this fact I clearly would have made an effort to prevent the default against my mother and I...."

Willette has made no attempt to explain the discrepancies between her declaration and the proposed answer or to explain her son's statement that she, too, was responsible to plaintiff on the transaction.

We therefore conclude that as to both defendants their failure to file appearance in this action prior to the expiration of the time permitted by law was inexcusable. Their motions should have been denied on the merits.

### EQUITABLE RELIEF

■ Even though a party seeking relief from default bases his motion solely on section 473 of the Code of Civil Procedure, the court has power to treat the motion as one for equitable relief. (*Marianos* v. *Tutunjian* (1977) 70 Cal.App.3d 61, 64 [138 Cal.Rptr. 529].)

As we mention hereafter, appellants sought in the trial court and seek here to have a determination that their defaults were taken due to extrinsic fraud, mistake or excusable neglect within the equitable jurisdiction of the court. They cite *Weitz* v. *Yankosky* (1966) 63 Cal.2d 849 [48 Cal.Rptr. 620, 409 P.2d 700], and other cases in support of this proposition. Witkin characterizes such principle, insofar as it might relate to the instant proceeding, as "... not so much the fraud or other misconduct of the defendant as it is the excusable neglect of the plaintiff to appear and present his claim or defense.... The policy favoring finality of judgments calls for denial of relief where the complaining party was guilty of negligence. [Citations.]" (5 Witkin, Cal. Procedure, Attack on Judgment in Trial Court, § 187, pp. 3757-3758.)

■ Here we have found that both parties were negligent in failing to take any meaningful action to protect themselves after being served with summons and complaint and notice requesting entry of their defaults. Equitable relief is singularly inappropriate. None of the authorities cited by defendants deals with a situation so patently void of justification for inaction by the party whose default was taken.

### INFORMATION OUTSIDE THE RECORD

On November 16, 1979, approximately three months after defendants had filed their notice of appeal, they noticed a new motion to set aside the default and the default judgment. Such motion was almost identical in form to the motion filed May 4, 1979. However, the points and authorities were augmented. The court was urged to exercise equitable jurisdiction to vacate the judgment in question, citing *Weitz* v. *Yankosky, supra*, 63 Cal.App.2d at page 855, to which we have referred above.

This new motion was heard November 26, 1979. The court construed it to be a motion to clarify the ruling on the original motion. A formal order was signed by the court on March 28, 1980, reciting that: "...defendants by their declarations have demonstrated good cause to have their default and default judgment set aside.

"...Notwithstanding the existence of good cause, and the desire of the Court to order the default and default judgment set aside, such an order cannot be entered because the motion, filed May 4, 1979, exceeded by one day the six month time limit of Section 473 of the Code of Civil Procedure.

"...Likewise, the request to set aside the default and default judgment on equitable grounds is denied for the sole reason that the Court is of the opinion that it does not have the equitable power or jurisdiction to enter such an order."

The proceedings taken after the notice of appeal was filed are a nullity. The order predicated thereon must be disregarded. ■ "An appeal removes from the jurisdiction of the trial court the subject matter of the judgment or order appealed from, including all issues going to the validity or correctness of such judgment or order. The trial court has no power thereafter to amend or correct its judgment or order, or to vacate or to set it aside. Such power cannot be reinvested in the trial court even by consent of the parties. [Citations.]" (*Takahashi* v. *Fish & Game Com.* (1947) 30 Cal.2d 719, 725 [185 P.2d 805];[4] see Code Civ. Proc., § 916, subd. (a).)

There are other matters which the court is required to disregard. Although there was no evidence before the trial court as to Thayer's reputation for truth and veracity, respondent's brief contains a recital that Thayer has "long been a confidence man, and on February 5, 1980 was sentenced in the Ventura County Superior Court of approximately 14 counts of taking money under false pretenses [*sic*] from nine different persons while he and his mother were doing business as CAMARILLO GOLD & SILVER EXCHANGE. A certified copy of that sentence is attached hereto as Exhibit 'A' and by reference made a part hereof...."

■ Both the above statement and the exhibit violate the well-established rule that it is not proper practice on appeal to refer in briefs to circumstances not established by the record. (*Lady* v. *Barrett* (1941) 43 Cal.App.2d 685, 687 [111 P.2d 702]; *Randall* v. *Allen* (1919) 180 Cal. 298, 302 [180 P. 941]; *Arruda* v. *Arruda* (1963) 218 Cal.App.2d 410, 414 [32 Cal.Rptr. 257].)

The order denying the motion is affirmed.

Kingsley, Acting P. J., and McClosky, J., concurred.

Petitions for a rehearing were denied January 16, 1981, and appellants' petition for a hearing by the Supreme Court was denied February 18, 1981.

---

[4]Reversed on other grounds in *Takahashi v. Fish Com'n* (1948) 334 U.S. 410 [92 L.Ed. 1478, 68 S.Ct. 1138].