Filed 11/13/23

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| DIANNE JIMENEZ, | |
|     Plaintiff and Respondent, | E078234 |
| v. | (Super.Ct.No. CIVDS 1931838) |
| PERRY CHAVEZ, | OPINION |
|     Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. John M. Pacheco, Judge. Affirmed.

Law Office Jason J. Allison and Jason J. Allison for Defendant and Appellant.

Law Office of Michael P. Newman, Michael P. Newman; Law Offices of Kevin Gerry and Kevin Gerry for Plaintiff and Respondent.

## I. INTRODUCTION

Defendant and appellant Perry Chavez appeals from the October 13, 2021 order denying Chavez's motion to vacate a default judgment and default in favor of plaintiff and respondent Dianne Jimenez. The motion was made pursuant to the mandatory relief or attorney fault provision of Code of Civil Procedure section 473, subdivision (b) (section 473(b).) Chavez's attorney, Jason J. Allison, attested in a supporting declaration that the default judgment and default were taken solely due to Allison's inexcusable neglect in failing to keep track of the case.

The court denied the motion as untimely because it was filed more than 180 days after the default judgment was entered. A motion to vacate a default judgment and default under the mandatory relief provision of section 473(b) is required to be filed "*no more than six months*" after the default judgment was entered. (§ 473(b).) Similarly, a motion for relief under the discretionary relief provision of section 473(b) must be filed "within a reasonable time, *in no case exceeding six months*," after the default judgment or other proceeding was taken against the party or the party's attorney. (*Ibid.*, italics added.)

Chavez claims his motion for mandatory relief was timely because it was filed on September 9, 2021, which was less than 182 days or a "half year" after the default judgment was entered on March 9, 2021. In *Davis v. Thayer* (1980) 113 Cal.App.3d 892 (*Davis*), the court concluded that "six months" under the discretionary relief provision of Code of Civil Procedure section 473(b) is equal to a "half year," and, under Government Code section 6803, a "half year" is 182 days. (*Davis*, at pp. 901-904.) Jimenez correctly

points out that Chavez's motion was filed 184 days after the default judgment was entered; thus, under the 182-day rule applied in *Davis,* the motion was untimely.

We conclude that the six-month limitations period of the mandatory and discretionary relief provisions of section 473(b) is either 182 days or six calendar months, whichever period is longer. (*Gonzales v. County of L.A.* (1988) 199 Cal.App.3d 601, 604 (*Gonzales*) ["six-months" limitations period of Gov. Code, § 945.6 means the longer of 182 days or six calendar months].) Government Code section 6804 states that " '[m]onth' means a calendar month, unless otherwise expressed," and the number of days in six calendar months varies from 181 to 184 days. (*Gonzales*, at p. 604.)

Under the six-calendar month rule, Chavez's motion was timely filed on September 9, 2021, six calendar months after the default judgment was entered on March 9, 2021. (Gov. Code, § 6804; Code Civ. Proc., §§ 12, 12a, 473(b).) Nonetheless, we affirm the order denying the motion. The motion was not "in proper form" (§ 473(b)) because it was unaccompanied by a proposed responsive pleading. The court was required to deny the motion on this ground.

## II. FACTS AND PROCEDURE

### A. *Background*

On October 23, 2019, Jimenez filed a complaint against Chavez, claiming a one-half interest in an Ontario residence that Jimenez and Chavez allegedly shared during "a lengthy period of cohabitation." On February 8, 2020, Chavez was served with the summons and complaint. On August 20, 2020, the clerk of the superior court entered

3

Chavez's default on the complaint.[1]  On March 9, 2021, a default judgment by court was entered, granting Jimenez "50 % fee simple legal and equitable ownership" of the Ontario residence.  On September 9, 2021, Chavez filed a motion to vacate the default judgment and the default, along with a supporting declaration of fault by Chavez's attorney, Allison.

B.  *Allison's Attorney Fault Declaration*

In his declaration, Allison claimed that the default judgment and default against Chavez "resulted solely" from Allison's "inadvertence."  Chavez was "properly served" with the summons and complaint and hired Allison in February 2020.  In February 2020, Jimenez and Chavez were in the midst of marital dissolution proceedings.  Allison averred:  "The parties' marital status was not apparent from the Complaint, but I assumed the parties must have been in a pending dissolution action (or were so to be).  I was correct and learned there was a pending dissolution action," and that Attorney Mendoza, who represented Jimenez in this civil action, also represented Jimenez in the dissolution proceedings.  Attorney Donnelly was representing Chavez in the dissolution proceedings.

Allison claimed he "was in the process of gathering facts and preparing an answer [to the complaint] when Covid-19 started becoming a major issue.  In late February 2020, [Allison] moved out of [his] office and set up a home office.  [¶]  In doing so, [Allison] had to let [his] assistant go, and [Allison] simply lost track of the case."

---

[1]  The summons and complaint, proof of service of the summons and complaint, and default of Chavez on the complaint are not included in the record on appeal.

"In or about July 2020, [Allison] was contacted by Ms. Mendoza's office who heard [Allison] was representing Chavez and wanted to confirm. [Allison] confirmed and stated [he, Allison] would be filing an Answer shortly." "[Allison] completed [his] draft Answer which was a general denial and sent it via Fax Filing to the San Bernardino Court, Central. [Allison had] an electronic fax, and [he] had not received any notice that the fax did not transmit. In any event, [Allison] lost track of the case and nothing further happened." Allison "did not adapt well to the Covid-19 crisis, and [he] struggled to keep [his] cases going and to fulfill [his] normal obligations. [He] also was not used to working without an assistant. In sum, the issues with this case stem from [his] not being able to timely recognize that [he] was not able to properly run [his] caseload under the Covid-19 circumstances."

In August 2021, Attorney Donnelly, who represented Chavez in the dissolution action, "informed" Allison that "a default judgment had been issued" against Chavez in "this immediate case." Allison did "not dispute" that the default judgment "was properly served" on Chavez. Allison claimed he "made a mistake which snowballed into a much bigger mistake—while Mr. Chavez did nothing wrong . . . ." Allison said, "I understand that Mr. Chavez acknowledges there is a community property interest in the [Ontario residence], but such is an issue which is to be decided in the pending dissolution action." In conclusion, Allison opined, "there are significant issues of fact and law which would be at issue in this matter should it be litigated. Mr. Chavez deserves the opportunity to present his side of the case and have the matter determined on the merits."

C. *The Timeliness Arguments and the Court's Ruling*

Allison signed the motion to vacate the default judgment and his attorney fault declaration on August 9, 2021. In the motion, Allison argued the motion was timely because the default judgment was entered on *February 9*, 2021, when, in fact, the correct date was March 9, 2021. In making this argument, Allison also appears to have assumed that the motion was being filed on August 9, when, in fact, it was filed on September 9. In any event, Jimenez filed an opposition to the motion, but the opposition is not included in the record on appeal.

At the October 13, 2021 hearing on the motion, Allison arranged to appear by telephone and was "on the line" according to the telephone operator, but Allison did not respond when the court called the matter and asked Allison whether he was "on the phone." Counsel for Jimenez, Priscilla Solario, appeared at the hearing. After the court learned that Allison was unavailable or no longer on the line, the following colloquy occurred between the court and counsel for Jimenez:

| | |
|---|---|
| The Court: | "Okay. You said it's untimely?" |
| Counsel for Jimenez: | "Yes." |
| The Court: | "Why is it untimely?" |
| Counsel for Jimenez: | "It was filed, I think, six months after . . . the judgment was entered." |
| The Court: | "All right. So the motion to set aside default is about 19 months after the complaint was serviced; 14 months after default was entered, is that correct?" |

6

| | |
|---|---|
| Counsel for Jimenez: | "Yes." |
| The Court: | "And five months after default judgment was entered, correct?" |
| Counsel for Jimenez: | "Yes. Well, it was—default judgment was entered on . . . ." |
| The Judicial Assistant: | "March 9." |
| Counsel for Jimenez: | "March. So six months, I believe it was filed six months." |
| The Court: | "Okay. Over six months?" |
| Counsel for Jimenez: | "Six months and one day because I think there's—I think my secretary calculated 181 days." |
| The Court: | "Okay. So the motion to set aside default will be denied. Ask that you give notice. I'm not going to grant you any attorney fees, okay." |
| Counsel for Jimenez: | "Yes, your Honor." |

D. *The Notice of Appeal*

Chavez appeals from the October 13, 2021 order denying his September 9, 2021 motion to set aside the March 9, 2021 default judgment and underlying default.

### III. DISCUSSION

A. *Section 473(b), Relevant Provisions*

Section 473(b) includes a mandatory relief or "attorney fault" provision, which requires the court to vacate a default and any resulting default judgment, if a motion or

7

application for relief from the default judgment (1) is filed "no more than six months after entry of judgment," (2) is "in proper form," and (3) is accompanied by an attorney's affidavit of fault, unless the court finds that the default judgment or dismissal was not caused by the attorney's mistake, inadvertence, surprise, or neglect.[2] (*Dollase v. Wanu Water*, *Inc.* (2023) 93 Cal.App.5th 1315, 1322-1323 (*Dollase*); Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2023) ¶¶ 5:290 to 5.295, pp. 5-78 to 5-81.)  The mandatory relief provision has three purposes:  "(1) 'to relieve the innocent client of the consequences of the attorney's fault' [citations]; (2) 'to place the burden on counsel' [citation]; and (3) 'to discourage additional litigation in the form of malpractice actions by the defaulted client against the errant attorney.' " (*Martin Potts & Associates*, *Inc. v. Corsair*, *LLC* (2016) 244 Cal.App.4th 432, 439.)  These purposes are advanced so long as mandatory relief "is confined to situations in which the attorney, rather than the client, is the cause of the default, default judgment, or dismissal." (*Ibid*.) Accordingly, a party is entitled to mandatory relief under section 473(b), even when the

---

**2** The mandatory relief provision states:  "Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect.  The court shall, whenever relief is granted based on an attorney's affidavit of fault, direct the attorney to pay reasonable compensatory legal fees and costs to opposing counsel or parties.  However, this section shall not lengthen the time within which an action shall be brought to trial pursuant to Section 583.310." (§ 473(b).)

8

attorney error is inexcusable, so long as the attorney affidavit of fault shows the error was the fault of the attorney rather than the client. (*Id*. at p. 442.)

Section 473(b) also contains a discretionary relief provision, which states the court "may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." An application under the discretionary relief provision "shall be made within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken." (§ 473(b).) Thus, both the mandatory and discretionary relief provisions of section 473(b) have maximum six-month limitations periods.

B. *The Parties' Arguments on Appeal*

*Davis* concluded that the six-month limitations period of the discretionary relief provision (§ 473(b)) was equivalent to a half year or 182 days. (*Davis*, *supra*, 113 Cal.App.3d at pp. 902-903; Gov. Code, § 6803.) Relying on *Davis*, Chavez claims his motion to vacate the default judgment and default, under the mandatory relief provision (§ 473(b)), was timely because it was filed *181 days* after the default judgment was entered. (*Davis*, at pp. 902-903.) Jimenez correctly points out that the motion was filed *184 days*, not 181 days, after the default judgment was entered. Thus, under *Davis*, the motion was untimely. Chavez has not filed a reply brief responding to Jimenez's argument.

9

C.  *Analysis*

On our own motion, we take judicial notice that September 9, 2021 was 184 days after March 9, 2021, computing the number of days in the time period by excluding the first day and including the last day, which was not a holiday.  (Evid. Code, §§ 452(h), 459, subd. (a); Gov. Code, § 6800; Code Civ. Proc., §§ 12, 12a.)  The application of the statute of limitations to undisputed facts is a purely legal question subject to our de novo review.  (*Aryeh v. Canon Business Solutions*, *Inc.* (2013) 55 Cal.4th 1185, 1191.)

We conclude that the six-month limitations periods of the mandatory and the discretionary relief provisions of section 473(b) mean the longer of six calendar months or 182 days.  (*Gonzales*, *supra*, 199 Cal.App.3d 601.)  As we explain, our decision can be reconciled with *Davis* and is consistent with *Troncale v. Troncale* (1960) 179 Cal.App.2d 86, 90 (*Troncale*), which applied the six-calendar month rule in calculating the six-month limitations period of the discretionary relief provision of section 473(b).

1.  *Troncale*

In *Troncale*, the superior court issued an order on September 3, 1957, modifying the defendant father's child support obligation.  (*Troncale*, *supra*, 179 Cal.App.2d at pp. 87-88.)  On March 3, 1958, the father filed a motion to vacate the September 3 order, and the trial court granted the motion.  (*Id*. at p. 88.)  On appeal, the plaintiff mother argued the trial court lacked jurisdiction to vacate the September 3 order because the motion to vacate the order was not filed "within six months" after the order was taken, within the meaning of the discretionary relief provision of section 473(b).  (*Id*. at p. 90.)  Then as now, a motion to vacate an order under the discretionary relief provision

10

(§ 473(b)) was required be filed " 'within a reasonable time, in no case exceeding six months, after such . . . order . . . was taken.' " (*Ibid*.) The mother argued that the motion, which was filed on March 3, 1958, was filed six months *and one day* after September 3, 1957. (*Ibid.)*

In concluding that the March 3, 1958 motion was timely filed "within six months" of the September 3, 1957 order, *Troncale* considered two alternative means of computing the six-month period: "If the period of six months is computed on the basis of 30 days to a month, the last day of the period would be March 2, 1958, which was Sunday. Since Sunday is a holiday (Gov. Code, § 6700), the period of six months would be extended to and including March 3, 1958. (Code Civ. Proc., § 12a; *Bell v. Krauss* [(1915)] 169 Cal.387, 391-392.) If the period of six months is computed on the basis of a calendar month, the last day of the period would be March 3, 1958. Under either method of computation, it appears that March 3 was the last day of the period of six months. Since the notice of motion was filed on that day, it was filed within the six months, and the court had jurisdiction to grant the motion." (*Troncale*, *supra*, 179 Cal.App.2d at p. 90.) Under the six-calendar month rule applied in *Troncale*, Chavez's motion for mandatory relief from the default judgment, filed on September 9, 2021, was timely filed within six calendar months of March 9, 2021, the day the default judgment was entered. (§ 473(b).)

2. *Davis*

In *Davis*, the court considered whether a motion to vacate two defaults and a default judgment against two defendants, filed on May 4, 1979, under the discretionary relief provision of section 473(b), was timely filed within six months of November 3,

11

1978, the date the defaults were entered.  (*Davis*, *supra*, 113 Cal.App.3d at pp. 897, 901-904.)  Under the discretionary relief provision (§ 473(b)), a motion to set aside a default judgment must be made no more than "six months" after the default—not the default judgment—is entered (*Sugasawara v. Newland* (1994) 27 Cal.App.4th 294, 296-297).  This is in contrast to the mandatory relief provision (§ 473(b)), which requires the underlying default to be vacated if a motion to vacate the default judgment is filed within six months of the date the default judgment was entered (*Sugasawara*, at pp. 296-297).

Davis reasoned that, under Government Code section 6803, " ' "[y]ear" means a period of 365 days; "half-year," 182 days' " and, under Government Code section 6804, " ' "[m]onth" means a calendar month, unless otherwise expressed.' " (*Davis*, *supra*, 113 Cal.App.3d at p. 901.)  The court also took judicial notice of the ordinary meaning of a "half a year" (Evid. Code, § 451, subd. (e)), which "in ordinary usage . . . must be the equivalent of six months" (*Davis*, at p. 902).  *Davis* then framed the question before it as whether, in construing section 473(b), " 'six months' " referred to a " 'half a year' " or 182 days (Gov. Code, § 6803) or to " 'six "calendar" months' " (Gov. Code, § 6804; *Davis*, at p. 903).

In concluding that the six-month limitations period was equal to a half year or 182 days, *Davis* adopted the " 'most liberal construction' " of the six-month period that applied to the case before it.  (*Davis*, at p. 903.)  The day the motion was filed, May 4, 1979, was the 182nd day after the defaults were entered on November 3, 1978; but, May 4, 1979 was also six calendar months *plus one day* after November 3, 1978.  (*Ibid*; see *Gonzales*, *supra*, 199 Cal.App.3d at p. 604 [noting that the motion in *Davis* was

untimely under the six-calendar month rule].)  Thus, *Davis's* adoption and application of the 182-day rule, over the six-month calendar rule, meant that the motion in *Davis* was timely.

*Davis* relied on long-settled principles governing judicial interpretations of statutory limitations periods:  "Where a statute establishing a time limitation is susceptible of several possible interpretations a liberal rule of construction is applied, and the '. . . computation of time should be so made as to protect a right and prevent a forfeiture if this can be done without violating a clear intention or a positive statutory provision.  As has been said, when the legislature requires a thing to be done within a certain time and deprives a party of a right for omitting to do it, the most liberal construction ought to be chosen and the furthest time given from which the reckoning is to be made.' " (*Davis*, *supra*, 113 Cal.App.3d at p. 903.)

Addressing the six-calendar month rule applied in *Troncale*, *Davis* reasoned that, because *Troncale* did not consider the half-year or 182-day rule of Government Code section 6803, *Troncale* could not "be considered as authority to deny the application" of the six-month calendar rule of Government Code section 6804 "to the case at hand" (*Davis*, *supra*, 113 Cal.App.3d at p. 904; *Troncale*, *supra*, 179 Cal.App.2d at p. 90.) Thus, *Davis* did not disagree with *Troncale* or its reasoning.  Rather, *Davis* declined to apply the six-calendar month rule because the motion in *Davis* was untimely under the six-calendar month rule but timely under the 182-day rule. (*Davis*, *supra*, 113 Cal.App.3d at p.904.)  In *Davis*, the 182-day rule was the more liberal means of calculating the six-month limitations period.  But nothing in *Davis* precludes courts from

13

applying the alternative six-calendar month rule when, as in *Troncale*, a motion for relief under section 473(b) would be timely under the six-calendar month rule, but untimely under the 182-day rule.

3. *Gonzales*

*Gonzales* interpreted the six-month limitations period of Government Code section 945.6, which provides that, "any suit brought against a public entity on a cause of action for which a [prefiling] claim is required to be presented" to the public entity must be filed "not later than six months after the date" that written notice of the public entity's rejection of the claim is deposited in the mail. (Gov. Code, § 945.6, subd. (a)(1); *Gonzales*, *supra*, 199 Cal.App.3d at pp. 603-604; see *Carrillo v. County of Santa Clara* (2023) 89 Cal.App.5th 227, 232.) The plaintiffs in *Gonzales* claimed they were falsely arrested by county sheriffs' deputies and filed claims with the county for damages pursuant to Government Code section 945.4. (*Gonzales*, *supra*, 199 Cal.App.3d at p. 603.) On January 20, 1983, the county rejected the claims in writing, advising the plaintiffs they had six months after the date the rejection notice was deposited in the mail to file a court action on their claims. (*Ibid.*; Gov. Code, §§ 913, 945.6.) On July 21, 1983, the plaintiffs filed a court action against the county. (*Gonzales*, at p. 603.) The trial court granted the county's motion for summary judgment on the ground the court action was untimely because it was not filed within 182 days after written notice of the rejection was mailed. (*Ibid.*; Gov. Code, § 945.6, subd. (a)(1).)

The *Gonzales* court concluded that "six months" (Gov. Code, § 945.6) means the longer of six calendar months or 182 days. *Gonzales* noted that "the basic problem with

14

the computation" of the six-month period "arises from the irregularity in the number of days in a month in our calendar. As a result, although six calendar months always equals one half year, the number of days contained in six calendar months varies, ranging from 181 to 184 days." (*Gonzales*, *supra*, 199 Cal.App.3d at p. 604.)

*Gonzales* also recognized that there was an "ambiguity" or potential conflict in applying Government Code sections 6803 and 6804 in computing the six-month period. The court explained: "Section 6800 et seq. govern computation of time. Although section 6804 provides that ' "[month]" means a calendar month, unless otherwise expressed' [citations], section 6803 provides that ' "year" means a period of 365 days' and ' "half year," ' means a period of ' "182" days.' " '[In] ordinary usage one year is the equivalent of twelve months and . . . half a year must be the equivalent of six months.' " (*Gonzales*, *supra*, 199 Cal.App.3d at p. 604, citing *Davis*, *supra*, 113 Cal.app.3d at p. 902.) Thus, "[t]o harmonize sections 6803 and 6804 and eliminate any ambiguity," the *Gonzales* court construed "section 945.6's six-month bar to mean an action must be filed within six calendar months or 182 days, whichever is longer." (*Gonzales*, at p. 604.)

*Gonzales* further explained that the "rationale of *Davis*" applied to Government Code section 945.6, given that *Davis* "explicitly based its conclusion on principles governing limitation of actions." (*Gonzales*, *supra*, 199 Cal.App.3d at pp. 604-605.) The court also noted "[t]here is a strong public policy that seeks to dispose of litigation on the merits wherever possible, rather than on procedural grounds." (*Id*. at p. 605.) The court said its conclusion harmonized Government Code sections 6803 and 6804 and comported

15

with the strong public policy in favor of "giving a litigant his day in court." (*Ibid*.) In harmonizing Government Code sections 6803 and 6804, *Gonzales* effectively harmonized *Davis* and *Troncale*. (See *Ibid*.) At least one published decision has followed *Gonzales* in applying the six-calendar month rule to a section 473(b) motion. (*Pro v. Leeness LLC* (2021 Cal.Super.Lexis 1823 at pp. *4-*7.)

    4.  <u>The Alternative Six-Calendar Month Rule Applies to Chavez's Motion</u>

As Jimenez argues, Chavez's motion to vacate the default judgment was untimely under *Davis*, which holds that the six-month limitations periods of the discretionary relief provision of section 473(b) means 182 days. (*Davis*, *supra*, 113 Cal.App.3d at p. 903; Gov. Code, § 6803). The motion was filed on September 9, 2021, 184 days after the default judgment was entered on March 9, 2021. We decline to follow *Davis* to the extent it may be interpreted as limiting the six-month limitations periods of section 473(b) to 182 days *in all cases*. Instead, we follow *Gonzales* and apply the alternative, six-calendar month rule in calculating the six-month limitations period as it applies to Chavez's motion because its approach reinforces the "strong public policy that seeks to dispose of litigation on the merits wherever possible, rather than on procedural grounds." (*Gonzales*, *supra*, 199 Cal.App.3d at p. 605.)

Under the six-calendar month rule, the motion was timely because it was filed on September 9, 2021, six calendar months *to the day* after the default judgment was entered on March 9, 2021. (Gov. Code, § 6800; Code Civ. Proc., § 473(b).) Under the six-calendar month rule, the six-month period ends six calendar months *to the numerical calendar day* after the challenged default judgment or order is entered. (*Gonzales*, *supra*,

16

199 Cal.App.3d at p. 602; *Troncale*, *supra*, 179 Cal.App.2d at p. 90.)  Indeed, as the phrase "six calendar months" is ordinarily understood (Evid. Code, § 451, subd. (e)), September 9, 2021, was six calendar months after March 9, 2021.  (§ 473(b).)

Our conclusion that the six-month limitations periods of section 473(b) are to be measured by *the longer* of 182 days or six calendar months does not violate any "clear intention or positive provision" of section 473(b).  (*Davis*, *supra*, 113 Cal.App.3d at p. 903.)  Our conclusion also avoids the absurd result of holding that an application for discretionary or mandatory relief under section 473(b) is untimely when, as here, it was filed more than 182 days (Gov. Code, § 6803), but no more than six calendar months (Gov. Code, § 6804), after the challenged action was taken.

5.  Chavez' Motion Was Nonetheless Properly Denied

Although Chavez's motion was timely, it was nonetheless properly denied because it was unaccompanied by a proposed responsive pleading.  As noted, the superior court is only required to grant a motion for relief under the mandatory relief provision of section 473(b) if the three conditions are met:  (1) the motion is timely filed, (2) is in "in proper form," and (3) is accompanied by an attorney affidavit attesting to, and showing that the challenged order was taken due to, attorney fault.  (*Dollase*, *supra*, 93 Cal.App.5th at pp. 1322-1323.)  The phrase "in proper form" encompasses the mandate, expressly included in the discretionary relief provision (§ 473(b)), that the motion be " 'accompanied by a copy of the answer or other pleading proposed to be filed . . . .' " (*Carmel*, *Ltd. v. Tavoussi* (2009) 175 Cal.App.4th 393, 401 (*Carmel*); *Hernandez v. FCA*

17

*US LLC* (2020) 50 Cal.App.5th 329, 337; *Dollase*, *supra*, 93 Cal.App.5th at pp. 1323-1324.)

The purpose of the proper form requirement "is to compel the delinquent party to demonstrate his or her good faith and readiness to proceed on the merits," and to ensure that "courts do not become ' " ' a sanctuary for chronic procrastination and irresponsibility on the part of either litigants or their attorneys . . . .' " ' " (*Carmel*, *supra*, 175 Cal.App.4th at p. 401.) The mandate "supports ' "policies [which] favor getting cases to trial on time, avoiding unnecessary and prejudicial delay, and preventing litigants from playing fast and loose with the pertinent legal rules and procedures." ' " (*Id.* at pp. 401-402.) "These policies apply with even greater force when mandatory relief is being sought." (*Id.* at p. 402.) "Because relief under the mandatory provision must be granted when the requisites of the statute are met, a trial court would have little or no ability to curb abuses if a proposed answer were not required. An attorney could repeatedly miss deadlines to file an answer, and the trial court would be required to excuse resulting defaults so long as the attorney confessed fault on each occasion. Such an interpretation would undermine the purposes" of the mandatory relief provision. (*Ibid.*)

In his declaration of attorney fault, Allison explained that he attempted file an answer to the complaint around or shortly after July 2020. Allison stated he did not receive notice from the court that his answer "did not transmit" to the court via facsimile. But Allison did not include a copy of the answer with the motion, nor did he attempt to file a proposed answer or other responsive pleading with the court at any time after the

18

motion was filed on September 9, 2021.  Thus, the motion was not in "proper form" and, as such, was properly denied.  (§ 473(b); cf. *Carmel*, *supra*, 175 Cal.App.4th at p. 403 [defendants substantially complied with proper form requirement by proffering a proposed answer at the hearing on the motion]; *Dollase*, *supra*, 93 Cal.App.5th at pp. 1319-1320 [defendant substantially complied with proper form requirement by attempting to file responsive pleading before the hearing on the motion, and by delivering the pleading to the court before the court ruled on the motion].)

IV.  DISPOSITION

The October 13, 2021 order denying Chavez's September 9, 2021 motion to vacate the March 9, 2021 default judgment is affirmed.  The parties shall bear their respective costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)

CERTIFIED FOR PUBLICATION

FIELDS
                                                                                        J.

We concur:


RAMIREZ
                    P.J.


McKINSTER
                    J.