[No. D004506. Fourth Dist., Div. One. June 12, 1986.]

VIRGINIA McNEIL GARDNER, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, etc., Respondent;
ARTHUR K. STATT et al., Real Parties in Interest.

**COUNSEL**

Lawrence R. LePiere for Petitioner.

No appearance for Respondent.

Fender, Campbell & Fender and Robert N. Campbell for Real Parties in Interest.

**OPINION**

**KREMER, P. J.**—Virginia M. Gardner petitions for writ of mandate to set aside the superior court order vacating her default judgment against real parties Arthur K. and Barbara L. Statt. The trial judge exercised no discretion but instead expressed the opinion he was compelled by this court and by

the judicial system in general to vacate the default. We issue the writ of mandate and direct the trial court to exercise its discretion.

Gardner sued the Statts for the unpaid principal balance of about $13,926 on a promissory note, plus interest, attorney fees, and costs. The Statts answered but failed to appear for their depositions, giving two days' notice to Gardner's counsel. Then they substituted themselves into the action in pro se in place of their attorney. Gardner sought sanctions for wilful failure to appear for depositions. The Statts responded that Arthur Statt had an upper respiratory infection and "may not have felt like traveling" and Barbara Statt had to take care of her children and had minimal knowledge of the transaction. Sanctions were not granted.

The Statts failed, without notice, to appear at the trial setting conference set for September 6, 1985. The case was set for trial on December 6, 1985.

On December 4, 1985, Arthur Statt offered a settlement which Gardner's counsel found inadequate. Statt then told counsel he did not wish to travel all the way from the Statts' home in Montana to San Diego for trial and dreaded the idea of traveling in Southern California where he had bad luck. He said he had made no travel plans and did not know whether he would appear at the trial. He did not mention the state of his wife's health or the weather conditions in Montana.

Counsel talked further with Arthur Statt on December 5. Again nothing was said about his wife's health or inclement weather.

The Statts did not appear for trial on December 6. An attorney made a special appearance for them and moved for a continuance. He said Mrs. Statt was ill and said nothing about inclement weather nor about why Arthur Statt could not attend the trial.

Continuance was denied. At the trial, the judge observed in view of the Statts' admissions they really had no defense. Default judgment was entered for Gardner for $13,926 in principal, $3,245 interest, $8,378 in attorney fees and $205 in costs.

On January 8, 1986, the Statts noticed a motion for relief from default (Code Civ. Proc., § 473). Various declarations were filed in support of the motion. The declaration of Dr. Harvey Swanson said Barbara Statt was his patient; she came to him for treatment on December 3, 1985, with various

upper respiratory and related symptoms; he diagnosed a moderately severe case of bronchitis and advised antibiotics and bedrest. The doctor's declaration said nothing regarding Mrs. Statt's ability to appear for trial. The declaration of Mrs. Statt said Dr. Swanson told her if she did not stay home, take bedrest and avoid the cold weather, she would contract pneumonia, and as a consequence, she could not attend the December 6 trial. Mr. Statt's declaration said in December the roads in Montana are "usually icy" and "often closed" by snow and because he thought he might have a settlement agreement he did not make travel arrangements in time. The memorandum of points and authorities supporting the motion for default said the Statts reside in a remote part of Montana subject to extremely cold temperatures and harsh winter weather, and further, Barbara Statt was too ill to travel to San Diego to attend the trial on December 6.

Lacking from the evidence in support of the motion for relief was any allegation that the Montana weather, however usually harsh, actually prevented travel to San Diego on December 6, 1985. Also there was no evidence Arthur Statt could not travel on that day. The evidence with respect to Barbara's illness was that three days before the trial she was diagnosed as having moderately severe bronchitis for which bedrest was prescribed; the doctor did not allege he told her she could not travel to San Diego on December 6.

The trial court granted the motion for default relief. In doing so, the judge said:

". . . I can just see these guys in the Fourth Appellate District. The crocodile tears would be falling all over the place.

"You just haven't got a prayer, Counsel. I am sympathetic, but I think it is a stall, too, in reality, but that is just not the way they come out when they come up to the 4th District. It comes out, 'Here's the poor citizen, denied their day in court.' So I don't know.

". . . . . . . . . . . . . . . . . . . . . . .

"I see the practical aspects of what you are saying, but we do not live in a practical world anymore insofar as our judicial system is concerned, . . . ."

The task of determining whether to grant section 473 relief is committed in the first instance to the trial court's discretion. (*Davis* v. *Kay* (1973) 34 Cal.App.3d 680, 683 [110 Cal.Rptr. 198]; *Nicholson* v. *Rose* (1980) 106 Cal.App.3d 457, 461 [165 Cal.Rptr. 156].) To put the matter

plainly, it is the trial judge's job to decide such cases. It is the judge's responsibility to consider and weigh all the evidence and argument and make a reasoned choice. Abdication to some imagined appellate compulsion is not the exercise of discretion.

Nor is it true that all the precedent uniformly requires default relief. Certainly it is true that a policy of the law favors deciding cases on their merits, but other policies favor getting cases to trial on time, avoiding unnecessary and prejudicial delay, and preventing litigants from playing fast and loose with the pertinent legal rules and procedures. The annotations to section 473 reveal many decisions which have affirmed orders denying relief from default; and although rare, there are even occasional cases reversing trial court orders granting relief. (One such decision is *Davis* v. *Kay, supra,* 34 Cal.App.3d 680.) What is more, the published precedent is but a drop in the great ocean of matters decided in the trial court and then either not appealed at all, or decided on appeal by nonpublished opinion. In this vast body of law, created at the trial court level, we have no doubt there is much precedent denying relief where a party's neglect is truly inexcusable. Were this not so, attorneys would hardly bother to take default judgments.

In a related area, the granting of continuances, it has been aptly observed:

". . . we are in the midst of a law explosion as a result of which court time has become an increasingly scarce and valuable, if not an endangered, resource. We cannot permit the courts to become a sanctuary for chronic procrastination and irresponsibility on the part of either litigants or their attorneys.

"The trial judge must assert his power and 'vigorously insist upon cases being heard and determined with as great promptness as the exigencies of the case will permit.' (*Mann* v. *Pacific Greyhound Lines* [(1949)] 92 Cal.App.2d 439, 446 [207 P.2d 105]; *Flynn* v. *Fink* [(1923)] 60 Cal.App. 670, 673 [213 P. 716].) Unnecessary continuances are wasteful, nonproductive, time-consuming and a fertile ground for criticism by the public of the courts." (*County of San Bernardino* v. *Doria Mining & Engineering Corp.* (1977) 72 Cal.App.3d 776, 780-781 [140 Cal.Rptr. 383].) The same might be said of default relief.

Further, in the development of the common law, the analysis of printed decisions of appellate courts is only part of the show. Development of the law begins in the trial courts, in the remarkable phenomenon whereby judges from manifold backgrounds and experiences labor incessantly to make sen-

sible, fair decisions in ever-changing factual patterns. This decisional process shapes the law, gives it richness, diversity, flexibility and meaning.

The trial judge here might garner inspiration from the words of a self-proclaimed "unreconstructed trial judge": "[The Court of Appeal] is a reviewing court, not a trial court. As I view our position in the judicial hierarchy, the trial court makes decisions and we review them. If we are going to make the decisions, we might as well do away with the trial courts and try all cases as original proceedings and save the taxpayers a heap of money. As an unreconstructed trial judge, I am a firm believer in the substantial evidence rule and in the rules governing the review of exercise of discretion on the part of trial courts. I spent many years on the playing field. Now that I am up here in the press box, I consider these rules to be our basic tools—not handy little gadgets that a result-oriented reviewing court can whimsically use or ignore to fits its idea of a proper result. When we ignore these rules any appearance of continuity or permanence in the law is superficial. Law becomes the subjective preference of the reviewing court." (*Wheeler* v. *St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 373-374 [133 Cal.Rptr. 775] [dis. opn. by Gardner, J.].) That same judge elsewhere noted: ". . . not every denial of a request for more time violates due process. (*Ungar* v. *Sarafite,* 376 U.S. 575 [11 L.Ed.2d 921, 84 S.Ct. 841].)" (*People* v. *Johnson* (1970) 5 Cal.App.3d 851, 859 [85 Cal.Rptr. 485].)

With respect to the trial judge's apprehension the matter warrants the shedding of crocodile tears, we note the phrase "crocodile tears" means hypocritical sorrow or false or affected tears, deriving from an ancient belief that crocodiles shed tears over their victims and make moaning sounds to attract their prey. (Webster's New Internat. Dict. (3d ed. 1968) p. 539.) Posterity must judge whether the court's reptilian reference is warranted; but, the pecking order being what it is, we must judge the trial court's exercise of discretion here, and find it distressingly absent.

We encourage our colleague on the trial bench, regardless whether he thinks his views are currently out of fashion, to shoulder his responsibilities as a player on the field of the common law, and leave the determination of hits and errors to the official scorer. By issuing our writ of mandate here, we afford him a second chance to play ball.

Further briefing or argument is unnecessary to determine the issue. A peremptory writ of mandate is proper (Code Civ. Proc., § 1088; *United Nuclear Corp.* v. *Superior Court* (1980) 113 Cal.App.3d 359, 361 [169 Cal.Rptr. 827]; *Goodenough* v. *Superior Court* (1971) 18 Cal.App.3d 692, 697 [96 Cal.Rptr. 165]).

Let a writ of mandate issue directing the superior court to vacate its judgment setting aside the defendants' default and to exercise informed discretion in deciding this matter.

Butler, J., and Lewis, J., concurred.