[No. B033057. Second Dist., Div. Seven. Dec. 8, 1988.]

CRAIG K. IOTT, Plaintiff and Appellant, v.
JOSEPH FRANKLIN et al., Defendants and Respondents.

**COUNSEL**

Gary Brown for Plaintiff and Appellant.

Annie R. Parenzan and John N. Flood for Defendants and Respondents.

## OPINION

WOODS (N. F.), J.—Plaintiff-appellant appeals from an order, made pursuant to California Code of Civil Procedure section 473,[1] vacating a default and default judgment and permitting an answer to be filed.

The single issue we decide, involving section 473[2] "excusable neglect," is this: May an attorney assume that opposing counsel has granted him extensions of time to file an answer because, in an effort to request such extensions, he has placed two phone calls to but not spoken with, written two letters to but not received answers from, opposing counsel? We think not.

### BACKGROUND

According to the complaint, in 1979 appellant began having a series of heart attacks so that in 1984 he decided to retire from his aerospace company employment. Around October 1984, he saw a local newspaper advertisement soliciting investment funds. Attracted by the ad's description of an opportunity to earn a 25 percent to 50 percent short-term return, he responded and thereafter personally met with the authors of the ad, Joseph and Leatrice Franklin, respondents.

At this meeting appellant told the Franklins of his heart condition, that he had only $25,000, no investment experience, and needed a safe investment. Mr. Franklin assured appellant that the real estate investment project was safe, would last not more than one year, and was to start about February 1985. Appellant agreed to invest his $25,000 and respondents agreed to retain appellant's services during the project term for $750 a week.

About December 1984, appellant deposited a $25,000 cashier's check in escrow for respondents' benefit. In return appellant received a corporation grant deed conveying an undivided one-tenth interest in certain property, which appellant alleges was and always had been worthless.

Thereafter appellant occasionally received modest sums as advances on his retainer agreement. He did not receive interest nor the return of his principal, despite repeated demands for its return.

Appellant retained attorney Gary Brown who, on April 17, 1987, filed a verified complaint for fraud and deceit, and other causes of actions based

---

[1] Which provides, in pertinent part: "The court may, upon such terms as may be just, relieve a party . . . from a judgment . . . taken against him or her through his or her mistake, inadvertence, surprise or excusable neglect."

[2] All code section references are to the California Code of Civil Procedure.

upon these same facts, claiming $50,000 actual and $500,000 punitive damages.

The complaint and summons were personally served on Mr. & Mrs. Franklin on May 12, 1987, and on Y.L. & A. Capital Corp. on May 13, 1987.

Facing an answer filing deadline of June 11th and June 12th, the Franklins contacted and retained attorney John N. Flood. Nowhere does the record indicate when the retention occurred. Mr. Franklin's declaration is silent on the subject and Mrs. Franklin did not file a declaration. Mr. Flood's declaration merely states that "on or about . . . June 11, 1987" he attempted to contact appellant's attorney, Mr. Brown. The only direct reference to the retainer date is in a letter, appended to respondents' section 473 motion, dated June 11, 1987, addressed to Mr. Brown and written by Mr. Flood. It states, "A client by the name of Joseph Franklin *just brought in* a copy of the summons and complaint that you served on him *recently.*" (Italics added.)[3]

On June 22, 1988, 40 days having elapsed since the last defendant, Y.L. & A. Capital Corp., had been served with the complaint and summons, and no answer having been filed, Mr. Brown prepared a request to enter default. According to his declaration of mailing, copies were mailed that day to all defendants and to the marshall in Santa Ana, the city where the Franklins lived.

On June 23, 1987, this request to enter default was filed with the clerk of the superior court.[4] On about this same date respondents' attorney, Mr. Flood, telephoned Mr. Brown to request a time extension.[5] He did not speak

---

[3] There was no declaration of mailing by Mr. Flood and if this letter was ever received by Mr. Brown he did not, according to his declaration, see it before June 22, 1987, the day he prepared the request to enter default.

The "just brought in" reference is in conflict with the date of service reference, "recently," since Mr. Franklin was served 30 days before the letter date of June 11.

[4] The clerk's file stamp appears to have been July 9, 1987, hand corrected to "Jun 23," and initialed. Mr. Flood, in his section 473 motion, states "In what appears to be a conspiracy between the Court Clerk and Gary Brown, all the documents presented for filing on July 9, 1987 were backdated to June 23, 1987 and accepted for filing." No affidavits, declarations, or other proof was offered to support this allegation. At the section 473 hearing, the trial judge stated he had asked the clerk about the matter but did not get an answer. A similar incident, the judge noted, had occurred a month earlier. Although the court optimistically assured counsel "I have since straightened it out that [*sic*] it isn't going to happen again," we note a similar clerical date correction on appellant's February 17, 1988, notice of appeal.

It is clear the trial court did not accept this unsupported conspiracy allegation.

[5] In his section 473 motion Mr. Flood states it was "approximately" or "on or about" June 23d that he telephoned Mr. Brown.

with Mr. Brown but left a message with Mr. Brown's secretary.[6] Mr. Flood also wrote Mr. Brown a letter, dated June 23, 1987, containing the same request.

On July 2, 1987, Mr. Flood, on behalf of all respondents, filed an answer.[7]

On October 6, 1987, after hearing appellant's proof, a commissioner ordered judgment be entered against respondents for $43,010 (fraud and deceit), $41,349 (breach of employment agreement), and $500,000 (punitive damages). That same day copies of the judgment and findings were mailed to respondents and to their attorney, Mr. Flood. The judgment was filed October 20, 1987.

On November 12, 1987, Mr. Flood filed respondents' motion to set aside the default and default judgment pursuant to section 473, to which was appended, in plain violation of California Rules of Court, rule 977, an unpublished opinion of the Court of Appeal.

Opposition to the motion was filed, a hearing held, and on January 22, 1988, the court granted the motion.

DISCUSSION

I

*Standard of Review*

■   It is settled that the law favors a trial on the merits (*Elms* v. *Elms* (1946) 72 Cal.App.2d 508, 513 [164 P.2d 936]; *Benjamin* v. *Dalmo Mfg. Co.* (1948) 31 Cal.2d 523, 525 [190 P.2d 593]; *Davis* v. *Thayer* (1980) 113 Cal.App.3d 892, 904 [170 Cal.Rptr. 328]; *Elston* v. *City of Turlock* (1985) 38 Cal.3d 227, 233 [211 Cal.Rptr. 416, 695 P.2d 713]; *Shamblin* v. *Brattain* (1988) 44 Cal.3d 474 [243 Cal.Rptr. 902, 749 P.2d 339]) and therefore liberally construes section 473. (*Elms* v. *Elms, supra,* 72 Cal.App.2d at p. 513.) Doubts in applying section 473 are resolved in favor of the party seeking relief from default (*Elston* v. *City of Turlock, supra,* 38 Cal.3d at p. 233) and if that party has moved promptly for default relief only slight evidence will justify an order granting such relief.

As recently expressed, "It is the policy of the law to favor, whenever possible, a hearing on the merits. Appellate courts are much more disposed

---

[6] Her memorandum of this message, according to Mr. Brown, was dated June 24.

[7] The less than two page answer admitted the perfunctory first four paragraphs of the complaint and denied the remaining thirty-seven. It also asserted five affirmative defenses.

to affirm an order when the result is to compel a trial on the merits than when the default judgment is allowed to stand. [Citations.] ■ Therefore, when a party in default moves promptly to seek relief, very slight evidence is required to justify a trial court's order setting aside a default." (*Shamblin* v. *Brattain, supra,* 44 Cal.3d at p. 478.)

■ Moreover, "[a] motion for relief under section 473 is addressed to the sound discretion of the trial court and an appellate court will not interfere unless there is a clear showing of abuse." (*Davis* v. *Thayer, supra,* 113 Cal.App.3d at p. 904.)

The primacy of and the deference due trial court discretion is best described by Justice Carter: "Trial judges are presumed to be intelligent, honest, and fair-minded individuals. They have a grave responsibility in cases of this character. The statute has reposed in them an exceptionally broad power. The power to grant relief from default. The statute has fixed the limit of that power. Within that limit it must be exercised wisely, reasonably and fairly, with the view of advancing the administration of justice. All this a trial judge is presumed to have done when he exercises his discretion in ruling on an application for relief from default under section 473 of the Code of Civil Procedure. ■ The ruling comes before an appellate court fortified with this presumption. The duty of the appellate court is to give full effect to this presumption. The question to be determined by the appellate court is not what it would have done had it been sitting in the place of the trial judge, but whether from the record it can be said that the trial judge failed to act wisely, reasonably and fairly in view of what was presented to him in support of the application. If such failure does not clearly and unmistakably appear, it cannot be said that the trial judge abused his discretion, and his decision should be affirmed." (*Benjamin* v. *Dalmo Mfg. Co., supra,* 31 Cal.2d at pp. 533-534 (dis. opn. of Carter, J.).)

But these policies favoring relief from default and deference to trial court discretion do not transform appellate courts into mere spectators. However strong the preference for a trial on the merits, there are limits to that preference and however great is trial court discretion, there are bounds to that discretion.

Just as it is "the trial judge's job to decide such cases" (*Gardner* v. *Superior Court* (1986) 182 Cal.App.3d 335, 339 [227 Cal.Rptr. 78]) it is the appellate court's job to review them, to measure the limits and bounds of trial court discretion.

## II

*"Mistake, Inadvertence, Surprise, or Excusable Neglect"*

■ Section 473 ("The court may, upon such terms as may be just, relieve a party . . . from a judgment . . . taken against him . . . through his . . . mistake, inadvertence, surprise, or excusable neglect."), by its own terms, both grants and circumscribes trial court discretion. Thus, if a party shows that a judgment has been taken against him through his mistake, inadvertence, surprise or excusable neglect the court may grant relief. Or it may not. It has discretion. But if a party fails to show that a judgment has been taken against him through his mistake, inadvertence, surprise or excusable neglect the court may not grant relief. It has no discretion.

More succinctly: "Section 473 of the Code of Civil Procedure permits relief for 'excusable' neglect. The word 'excusable' means just that: inexcusable neglect prevents relief." (*Carroll* v. *Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 895 [187 Cal.Rptr. 592, 654 P.2d 775].)

■ ■ ■ ■ The burden of establishing excusable neglect[8] is upon the party seeking relief who must prove it by a preponderance of the evidence. (*Elms* v. *Elms, supra,* 72 Cal.App.2d at p. 519; *Kendall* v. *Allied Investigations, Inc.* (1988) 197 Cal.App.3d 619, 624 [243 Cal.Rptr. 42].)

■ Respondents' evidence of excusable neglect consisted of the following: On the last day to file an answer, June 11th, their attorney, Mr. Flood, telephoned Mr. Brown, opposing counsel, to ask for an extension of time. Mr. Flood spoke only with a switchboard operator who refused to take a message. Mr. Flood then sent Mr. Brown a letter requesting a two-week extension. On either June 23d or June 24th (see *ante*, fns. 5 and 6) Mr. Flood again telephoned Mr. Brown's office to request an extension, did not speak to Mr. Brown, but left a message with Mr. Brown's secretary. He also wrote a letter to Mr. Brown (which does not refer to any phone calls), dated June 23, requesting "another" two-week extension.

Respondents' attorney sums up the effect of this evidence this way: "Attorney Flood reasonably relied on the fact that Mr. Brown did not deny his request for an extension of time to answer. He had made a similar request by phone and letter earlier in June without a response of any kind and it was reasonable to assume that Mr. Brown's silence again meant acquiescence."

---

[8] A broader term than "mistake" and one which for our purposes encompasses "mistake, inadvertence, and surprise" (see 8 Witkin, Cal. Procedure (3d ed. 1985) Attack On Judgment In Trial Court, § 154, p. 556).

Appellant sees it differently: Respondents' failure is founded upon "defense counsel's premise that he could unilaterally grant his own extension without any communication from opposing counsel."

### III

### *"Excusable Neglect" Case Law*

With the annotations to section 473 exceeding 300 pages (West's Ann. Code Civ. Proc. (1979 ed.) § 473, pp. 96-398), there is no dearth of case law guidance.

Although innumerable decisions affirm trial court orders, whether granting or denying relief, and some reverse trial court orders denying relief, consonant with the policy favoring a trial on the merits, decisions reversing trial court orders granting relief are not, despite common opinion, rare. (See, e.g., *Gardner* v. *Superior Court, supra,* 182 Cal.App.3d 335, 339.)

Orders granting relief have been reversed in varied circumstances: an attorney failed to file a timely answer because he believed the service of the complaint and summons was invalid (*Shearman* v. *Jorgensen* (1895) 106 Cal. 483 [39 P. 863]); a party knowingly failed to appear at trial (*Elms* v. *Elms, supra,* 72 Cal.App.2d 508); defendant waited over three months before seeking 473 relief (*Benjamin* v. *Dalmo Mfg. Co., supra,* 31 Cal.2d 523); plaintiff's dilatoriness in providing discovery led to dismissal (*Carroll* v. *Abbott Laboratories, Inc., supra,* 32 Cal.3d 892 [170 Cal.Rptr. 328]); defendant's first attorney failed to file a timely answer and defendant's second attorney sought relief over five months after default (*Kendall* v. *Allied Investigations, Inc., supra,* 197 Cal.App.3d 619).

Other cases, in different procedural postures, have found that as a matter of law relief could not be granted. In *Davis* v. *Thayer* (1980) 113 Cal.App.3d 892 [170 Cal.Rptr. 328] the trial court denied defendants relief from a default judgment on the mistaken ground that their motion was filed one day after the six month deadline.[9] The Court of Appeal held that the motion had been filed within the six-month period but found defendants' reasons for not timely filing an answer inexcusable, and thus affirmed the denial of relief.

In *Gardner* v. *Superior Court* (1986) 182 Cal.App.3d 335 [227 Cal.Rptr. 78], despite the trial court order granting defendants relief from a default

---

[9] "Application for such relief . . . must be made within a reasonable time, in no case exceeding six months. . . ." (§ 473.)

judgment, the appellate court found that the trial court had in fact not exercised its discretion and, in issuing a writ of mandate, ordered it to do so. The Court of Appeal was no more impressed with defendants' "poor health" and "bad weather" excuses for absenting the trial than with the trial judge's visions ("'. . . I can just see these guys in the Fourth Appellate District. The crocodile tears would be falling all over the place.'" (*Gardner* v. *Superior Court, supra,* at p. 338.)).

Still other cases have resisted poignant grounds for relief. In *Bellm* v. *Bellia* (1984) 150 Cal.App.3d 1036 [198 Cal.Rptr. 389] the defendant was served with a complaint on November 13th and failed to file an answer before entry of default on December 28, because his father was dying of cancer which both distracted him and placed an extra Christmas business burden upon him. The trial court's denial of relief was affirmed.

Distinguishable are evidentiary conflict cases, where the appellate court merely recognizes the trial court's function to resolve conflicts in the evidence. (*Shamblin* v. *Brattain, supra,* 44 Cal.3d 474.)

Also distinguishable are the inadvertent neglect cases such as *Elston* v. *City of Turlock, supra,* 38 Cal.3d 227. In reversing the trial court's denial of relief, the Supreme Court considered the two reasons plaintiff's attorney gave for failing to respond to a request for admissions. Acceptable was counsel's inadvertence: the request had been misplaced and counsel was unaware of it until too late. The court explained that "[w]here an attorney states that he was unaware of his duty to appear or answer because his employees misplaced papers or misinformed him as to the relevant date, relief is routinely granted." (*Elston* v. *City of Turlock, supra,* 38 Cal.3d at p. 234.) But unacceptable was counsel's advertance: counsel was just too busy with other matters. "This circumstance standing alone would not constitute excusable neglect." (*Ibid.*)

## IV

### Application of Law to Respondents' Conduct

■ Although it is the conduct of respondents' attorney we here consider, that conduct is imputed to respondents. (*Buckert* v. *Briggs* (1971) 15 Cal.App.3d 296, 301 [93 Cal.Rptr. 61].) The exception to this rule of imputation, eroded if not eliminated by *Carroll* v. *Abbott Laboratories, Inc., supra,* is inapplicable. As in *Carroll* v. *Abbott,* there is nothing in the conduct of respondents' attorney that suggests client abandonment or that amounts to an "obliteration" of the client-attorney relationship. (*Buckert* v. *Briggs, supra,* 15 Cal.App.3d 296, 301.)

■ Whether or not the conduct of respondents' attorney prejudiced appellant is irrelevant. If the conduct was excusable, prejudice to appellant will not make it inexcusable. But if the conduct was inexcusable, absence of prejudice to appellant will not make it excusable. (*Carroll* v. *Abbott Laboratories, Inc., supra,* 32 Cal.3d 892, 900; *Benjamin* v. *Dalmo Mfg. Co., supra,* 31 Cal.2d 523, 530.)

We have found no case with facts quite like this case. But analogous facts have precipitated this reaction: "A litigant who fails to attend court on the day of his trial for the simple reason that he believes his attorney will succeed in securing a continuance cannot claim either mistake or surprise, within the meaning of section 473, Code of Civil Procedure, if a continuance is refused. It would be absurd to countenance or encourage practices of that sort." *Nicholson* v. *Nicholson* (1948) 85 Cal.App.2d 506, 509-510 [193 P.2d 112]; see also *Gardner* v. *Superior Court, supra,* 182 Cal.App.3d 335.)

■ Our reaction is similar: "It would be absurd to countenance or encourage" unilateral, self-created extensions of time. ■ We, therefore, hold that an attorney who assumes that opposing counsel has granted him extensions of time to file an answer because, in an effort to request such extensions, he has placed phone calls to but not spoken with, written letters to but not received answers from opposing counsel is guilty of inexcusable neglect within the meaning of section 473. Under such circumstances it is an abuse of discretion for a trial court to grant section 473 relief.

To hold otherwise would " 'permit the courts to become a sanctuary for chronic procrastination and irresponsibility on the part of either litigants or their attorneys.' " (*Gardner* v. *Superior Court, supra,* 182 Cal.App.3d 335, 339.) It would also thwart vital "policies [which] favor getting cases to trial on time, avoiding unnecessary and prejudicial delay, and preventing litigants from playing fast and loose with the pertinent legal rules and procedures." (*Ibid.*) "When inexcusable neglect is condoned even tacitly by the courts, they themselves unwittingly become instruments undermining the orderly process of the law." (*Transit Ads, Inc.* v. *Tanner Motor Livery, Ltd.* (1969) 270 Cal.App.2d 275, 282 [75 Cal.Rptr. 848].)

### DISPOSITION

■ The trial court order granting section 473 relief is reversed and the case is remanded to the trial court with directions to vacate its order setting aside the default and default judgment and permitting the filing of an answer and to enter a new and different order denying appellant's motion for relief pursuant to Code of Civil Procedure section 473. The trial court is further ordered to reinstate the default and default judgment.

Appellant to recover costs on appeal.

Lillie, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied January 4, 1989, and respondents' petition for review by the Supreme Court was denied February 23, 1989.