Filed 7/20/21  Marriage of Gallego CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of GALLEGO | D077846 |
| MARIA TERESA SALINAS FERNANDEZ, | |
| Respondent, | (Super. Ct. No. EFL18390) |
| v. | |
| FRANCISCO GALLEGO GARCIA, | |
| Appellant. | |

APPEAL from an order of the Superior Court of Imperial County, Juan Ulloa, Judge.  Affirmed.

Sondra S. Sutherland for Appellant.

No appearance for Respondent.

INTRODUCTION

This appeal arises out of a marital dissolution proceeding that has been pending for over five years. Francisco Gallego Garcia (Francisco)[1] appeals from the family court's order denying his motion, under Code of Civil Procedure section 473, subdivision (b),[2] to set aside orders issued on July 17, 2019 that he pay child support and attorney fees to his ex-wife, Maria Teresa Salinas Fernandez (Maria).[3]

Francisco contends the family court abused its discretion by treating the motion as an appeal and denying it without weighing the evidence or applying section 473, subdivision (b), to the evidence presented. He asserts the court's reasons for denying the motion do not represent a reasoned decision on the merits. In the alternative, he contends the attorney fees order should be set aside on the ground that the court violated his right to procedural due process. Because the record does not support Francisco's contentions, we affirm the order denying his set-aside motion.

---

[1]    We use first names for ease of reference and clarity.

[2]    All statutory references are to the Code of Civil Procedure unless indicated otherwise.

[3]    This appeal is limited to the denial of the set-aside motion pursuant to section 473, subdivision (b). The propriety of the July 17, 2019 child support and attorney fees orders are not before us. Maria did not file a respondent's brief and the Attorney General filed a letter stating that he would not be filing a respondent's brief because the issues raised by Francisco do not impact the statewide child support program. Accordingly, we "decide the appeal on the record, the opening brief, and any oral argument by the appellant." (Cal. Rules of Court, rule 8.220(a)(2).) The failure to file a respondent's brief is not treated as a default or a concession that the trial court erred; instead, we must examine the record and points raised in the opening brief to determine if reversible error occurred. (*Hogue v. Hogue* (2017) 16 Cal.App.5th 833, 835, fn. 1.)

2

## FACTUAL AND PROCEDURAL BACKGROUND

### I.

### *The Dissolution*

Francisco and Maria had been married for almost 26 years when Maria filed for divorce in February 2016.  They had four children, ages 6, 13, 16, and 18.  Maria, who became pregnant with the couple's first child when she was 16 years old, did not complete high school and did not work during the marriage.  Francisco supported the family with rental properties he owned and managed in Mexico and a party rental service he ran.

In March 2016, Maria filed a request for order (RFO) seeking orders on child support, spousal support, and attorney fees.  Specifically, she sought guideline child support for the parties' three minor children.  She also sought temporary spousal support and need-based attorney fees pursuant to Family Code section 2030.  In her supporting income and expense declaration (IED), Maria indicated she was unemployed and estimated, based on her personal knowledge, that Francisco earned a gross monthly income of $6,000.  She stated the parties' combined household monthly living expenses were $4,992.  Maria also filed the parties' joint income tax returns for 2013 and 2014, which showed a total household income of $46,151 (or $3,846 monthly) in 2013 and $54,670 (or $4556 monthly) in 2014.

Francisco filed a responsive declaration to Maria's RFO and an IED in April 2016.  He identified his occupation as "business owner/rental property" and stated that he earned a gross monthly income of $1,666, and the parties' household monthly living expenses were $4,176.

At the hearing on Maria's RFO in April 2016, the family court determined that Francisco's gross monthly income was $5,000 and Maria's was zero.  The court ordered Francisco to pay Maria monthly guideline child

support of $1,841 for the three minor children and monthly temporary spousal support of $730, effective April 1, 2016. The court also ordered Francisco to contribute $2,000 to Maria's attorney fees.

In June 2016, the court issued custody and visitation orders and modified monthly guideline child support to $1,766 to reflect a change in timeshare.

In August 2016, Francisco filed an updated IED, stating his gross monthly income had increased to $3,390 because he had "two new rental incomes as of June 2016."

Trial on the dissolution began in November 2016 and was conducted over five days. On January 6, 2017, the family court terminated marital status and made orders for the division of property, child custody and visitation, guideline child support, spousal support, and attorney fees. The court once again determined Francisco's gross monthly income was $5,000 and Maria's was zero. It found the marital standard of living was "[m]edium to high" and that the parties "spent double" their current income and had amassed more than $80,014 in credit card and other unsecured debt. The court set monthly guideline child support for the parties' three minor children at $2,079[4] and spousal support at $622, effective February 1, 2017. Lastly, the court ordered Francisco to pay $8,000 towards Maria's attorney fees. A judgment of dissolution incorporating these orders was entered March 20, 2017.

On July 18, 2018, Francisco filed an RFO to modify the orders for parenting time, child and spousal support, asserting (among other reasons) that his income had "substantially declined" because he "lost rental clients"

---

[4]    In March 2017, the eldest child subject to child support turned 18 and guideline child support was reduced to $1,627 per month for the remaining two minor children.

4

"[d]ue to the Mexican peso devaluation's [*sic*]." He filed an IED declaring an average gross monthly income of $3,552.

On July 24, 2018, Maria filed a separate RFO requesting a move-away order to relocate the two minor children to San Diego County, an upward modification of guideline child support, and a $5,000 award of attorney fees.

On August 2, 2018, Maria responded to Francisco's July 18 RFO with a supporting declaration and IED. In her IED, Maria estimated Francisco's gross monthly income was $7,500, based on the trial court's determination of his income at trial in November 2016 "plus the monthly average of the $30,000 he had in cash." In her supporting declaration, Maria alleged that: "F[rancisco] has claimed a low income since the proceedings in this case began, and he has previously been found by [the trial court] to have lied about his income. F[rancisco] does not explain why his income is lower now. F[rancisco's] Income and Expense Declaration states that due to the 'Mexican peso devaluation, he has lost rental clients.' . . . [T]his is untrue. . . . [A]ll the rental properties owned by F[rancisco] and [his brother] are currently rented . . . . [and he] has other rental properties with other individuals in which he is also co-proprietor, and for which he has never disclosed income." Maria requested $37,874.55 in attorney fees.

The hearings on both RFOs were continued several times, and the parties continued to file additional information regarding their respective incomes and expenses. In January 2019, Francisco updated his IED to show $3,263 in average monthly rental income. Maria also filed an updated IED estimating Francisco's average gross monthly income to be $7,500. She further stated that as of November 30, 2018, she had paid $52,570.80 in attorney fees out of the sale proceeds for the family residence.

5

The court held a series of hearings on the RFOs in April, May and June 2019. During a hearing in May 2019, the court made an interim monthly support modification based on a finding that Francisco earned $10,000 in monthly income, stating that Francisco would have the opportunity to challenge that finding at the next hearing. The court also ordered that Francisco pay an additional $15,000 to cover Maria's attorney fees and stated that a final determination regarding attorney fees would be made at the next hearing.

At the June 2019 hearing, over Francisco's objection that the matter had not been fully heard, the court indicated its readiness to make findings regarding Francisco's income and an additional attorney fees award. The court found that Francisco failed to overcome its determination that he had at least $10,000 in monthly income. After finding that Francisco caused the majority of litigation costs based on his inability or failure to present evidence without being compelled, the court ordered Francisco to pay another $55,000 to cover Maria's attorney fees. Francisco appealed from the family court's July 17, 2019, child support and attorney fees orders, but later abandoned the appeal.[5]

II.

*The Set-Aside Motion*

In November 2019, Francisco filed a substitution of attorney. In December 2019, Francisco's new attorney filed an RFO to set aside or modify the orders under section 473, subdivision (b).[6] Francisco submitted a

---

[5]     We refer to the child support and attorney fees orders issued on July 17, 2019 as "the orders."

[6]     Francisco's RFO also cited Family Code section 2122 as grounds for relief. Family Code section 2122 provides the grounds and timing for a motion to set aside a judgment on certain enumerated grounds, including fraud,

declaration and report by a forensic accountant showing that his income averaged $3,304 per month in 2018 and $3,217 per month through September 30, 2019. In a sworn declaration, Francisco stated that the court issued the orders against him through his mistake, inadvertence, surprise or excusable neglect, and that the orders unexpectedly harmed him through no fault of his own.

Francisco explained the court's finding that he earned $10,000 per month "caught [him] off guard and surprised" him. Francisco did not understand the court could assume income from his banking activity and had he known this, he would have hired a forensic accountant to aid the court in accurately determining his income available for support, as he has now done. Francisco expressed his surprise with the court's award of over $90,000 in attorney fees because Maria had only requested $5,000 in her July 24, 2018 RFO. He also claimed a lack of due process, "specifically, notice of the proposed action and a full and fair opportunity to be heard before being deprived of my inheritance money." (Underscore in original.) He requested that his support and attorney fees obligations be based on a correct calculation of his income.

Appearing as a self-represented litigant on the set-aside motion, Maria filed a responsive declaration. She stated that the court gave Francisco an opportunity to file a brief regarding his income and ability to pay attorney fees. She also questioned the documents that the forensic account relied upon in determining Francisco's monthly income. In a reply declaration, Francisco

perjury, duress, and mental incapacity. Francisco, however, does not contend on appeal that the family court erred by denying relief under this statute, so we need not address the issue further.

7

reiterated his shock at the court's finding that he had $10,000 in monthly income.

At the hearing on Francisco's set-aside motion in February 2020, Francisco's attorney argued mistake, inadvertence, surprise or excusable neglect, and asserted that Francisco lacked notice that the court might find Francisco earned $10,000 per month, or that he might owe over $90,000 in attorney fees. The court regarded Francisco's motion as "akin to a new trial, a reconsideration, and a relitigating of an appeal that was withdrawn." The court observed its limited ability to "review[ ] matters that [were] already decided." The court also stated that it is not inclined to "set aside, reopen or reconsider matters that were determined after contested [proceedings]" noting that Francisco had an attorney, the court heard the evidence and the time for appeal had passed. The court specifically noted: "[T]here are contested issues of fact [regarding Maria's efforts to find work] which are blended into a lot of matters that the court cannot revisit because they are settled, including, for example, the determination of income, the determination of reasonable attorney fees and responsibility for that. Those are trial matters. Those are judgment matters, and the appeals period has run."

Francisco asserted that the court may be confusing an appeal raising judicial error with a set-aside motion based on his mistake or excusable neglect, stating that he failed to get a report from a forensic accountant earlier based on his mistaken belief that the court would find his monthly income to be $5,000 or less. The court stated it would not "revisit" past findings and denied Francisco's "request to set aside." On June 1, 2020, the court entered its findings and orders after hearing (FOAH) denying Francisco's set-aside motion. Francisco timely appealed from the June 1, 2020 FOAH.

8

# DISCUSSION

## I.

### *No Abuse of Discretion in Denial of the Set-Aside Motion*

A.      *Legal Principles*

Section 473, subdivision (b), permits the trial court to grant relief from a judgment, order or other proceeding taken against a party by "mistake, inadvertence, surprise, or excusable neglect."  The party seeking relief must show, by a preponderance of the evidence, that due to a mistake of fact or law by the party or the party's attorney, " 'or through some inadvertence, surprise or neglect which may properly be considered excusable, the judgment or order from which [the party] seeks relief should be reversed.' "  (*Kendall v. Barker* (1988) 197 Cal.App.3d 619, 623–624.)  "[I]f a party shows that a judgment [or order] has been taken against [the party] through [the party's] mistake, inadvertence, surprise or excusable neglect the court may grant relief.  Or it may not.  It has discretion.  But if a party fails to show that a judgment has been taken against [the party] through [the party's] mistake, inadvertence, surprise or excusable neglect the court may not grant relief.  It has no discretion."  (*Iott v. Franklin* (1988) 206 Cal.App.3d 521, 528.)

"The standard for appellate review of an order denying a motion to set aside under section 473 is quite limited.  A ruling on such a motion rests within the sound discretion of the trial court, and will not be disturbed on appeal in the absence of a clear showing of abuse of discretion, resulting in injury sufficiently grave as to amount to a manifest miscarriage of justice.  Where a trial court has discretionary power to decide an issue, an appellate court is not authorized to substitute its judgment of the correct result for the decision of the trial court."  (*In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 118, fn. omitted.)  "Moreover, all presumptions will be made in

9

favor of the correctness of the order, and the burden of showing abuse is on the appellant." (*Lint v. Chisholm* (1981) 121 Cal.App.3d 615, 620.)

B.     *No Showing That the Family Court Failed to Exercise or Abused Its Discretion*

Francisco argues the family court failed to exercise its discretion under section 473, subdivision (b), constituting an abuse of discretion and reversible error. He concedes the court listened to his attorney's arguments and reviewed the declarations on the record, but claims that the court treated the motion as an appeal, that it failed to weigh the evidence and arguments asserted as grounds for relief, and it failed to apply that evidence to section 473, subdivision (b). He contends the court's refusal to set aside the orders prejudiced him by causing substantial injury. The record, however, does not support Francisco's assertions.

1.     *Francisco's Income*

In his declaration supporting the motion, Francisco asserted the court's finding that he earned $10,000 per month surprised him because he "had no reason to believe the court would suddenly find" he earned that amount out of confusion regarding his income and did not understand that the court could assume income from his bank deposits. Francisco stated he would have hired a forensic accountant to aid the court had he received notice that the court contemplated finding that he had $10,000 in monthly income. Francisco repeats this argument on appeal, claiming that the history of the litigation, Maria's contentions, and his experience dealing with the family law judge did not place him on notice that the court might find that he earned $10,000 a month. He contends that the court's shift from finding that he made $5,000 a month to twice that amount came as a complete surprise and he could not have anticipated that the court would make such a finding based solely on his banking activity.

10

"The term 'surprise,' as used in section 473, refers to ' "some condition or situation in which a party . . . is unexpectedly placed to his injury, without any default or negligence of his own, which ordinary prudence could not have guarded against." ' " (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 611.) Regarding inadvertence or neglect, " '[t]o warrant relief under section 473 a litigant's neglect must have been such as might have been the act of a reasonably prudent person under the same circumstances. The inadvertence contemplated by the statute does not mean mere inadvertence in the abstract. If it is wholly inexcusable it does not justify relief.' " (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1206.)

The record does not support Francisco's purported surprise regarding the court's income finding, or excusable neglect in failing to hire a forensic accountant. In the March 2017 dissolution judgment, the court found Francisco's monthly income to be $5,000. In August 2018 and January 2019, Maria's IEDs estimated Francisco's gross monthly income at $7,500, consisting of the $5,000 that Francisco earned each month, plus a monthly average of $30,000 that Francisco had in cash.

A February 2019 declaration from Maria's attorney stated that in 2018, one of Francisco's bank accounts averaged $25,796.80 in monthly deposits. In December 2018, this account received a $78,830.50 deposit. Maria's attorney noted that these large deposits contradicted Francisco's assertions regarding vacant rental properties and a struggling business. A March 2019 declaration from Maria's attorney reported that a statement for one of Francisco's bank account showed that in April 2018 Francisco deposited $16,530, of which approximately $13,000 had been deposited in cash. Based on this new information, Francisco's monthly deposits from January 2018 to June 2018, averaged $9,002.16.

11

In a May 2019 declaration regarding his finances, Francisco stated that he would be inheriting an investment account worth $352,855 but claimed that litigation held up the inheritance. Francisco asserted that his bank deposits either were accounted for elsewhere, or did not reflect gross rental property income because he sometimes took out money for non-business purposes and then returned the money to the account.

At the May 9, 2019 hearing, Maria's attorney stated that Francisco was supposed to file a brief on May 3, explaining "the deposits that [they] had found." Counsel argued: "We had done our own analysis, but Francisco has his own explanation for what his income should be for the court's determination. [¶] But there's no effective way to get that out in testimony in any reasonable amount of time, so the order last time, by stipulation, was that he would have some sort of statement as to what his position was regarding what we agree are his substantial deposits. . . . [¶] So that was due on the 3rd, and we don't have it yet. [¶] . . . [¶] My client's position is how much more of an opportunity do we need to give him to explain this. [¶] From his perspective, these deposits didn't even exist at first, then they're revealed and then now they have explanations."

As a solution for Francisco's income, Maria's attorney suggested that because inconclusive information existed regarding Francisco's earnings, "the court may feel comfortable that [Francisco's] earning as much as he was before his representation or reduction at trial, which is 10,000 a month instead of 5,000." Counsel continued: "But, honestly, I think the evidence supports more than that. But, as I said, my offer for [Francisco's attorney] is maybe he wants to orally explain what his brief is going to say." Francisco's attorney then confirmed that the court wanted to resolve these issues that day by issuing orders.

12

After a recess, Francisco's attorney indicated that due to the "complexity" of the issue, he could not provide the court with an oral explanation regarding Francisco's income that would allow the court "to make an actual finding with respect to [Francisco's] income." However, after discussion with the court, Francisco's attorney never suggested the need for a forensic examination of Francisco's deposits or income. Rather, toward the end of the hearing the court required that Francisco provide financial information to Maria's attorney by May 13, 2019 and stated that all other matters would be finalized on May 31. At the end of the hearing the court stated:

> "We had hoped that we would have a better picture of the response to the allegations on income in order to address the ability of [Maria] to prepare for the final trial step. We don't have that. [¶] We do have some parameters. We know pretty effectively that [Francisco's] income is no less than -- based on the evidence we've heard so far, subject, of course to adjustment -- I think the evidence supports and concludes that his income is no less than $10,000 a month, that child support guidelines should be adjusted based on that amount . . . ."

When Francisco's attorney asked whether the court had made an order, the court clarified that it made "an interim monthly support modification" based on Francisco's monthly income of $10,000 pending the next hearing and that Francisco would have the opportunity to challenge that finding at that time. The court minutes for this hearing set Francisco's monthly income at $10,000.

Thus, approximately one month before the June 7, 2019 hearing where the court made the orders based on its finding that Francisco had $10,000 in monthly income, Francisco knew that the court would count deposits into his bank accounts as income and he had the burden to explain that these deposits did not constitute income. However, we located nothing in the record

13

suggesting that Francisco sought a continuance during this one-month period to hire a forensic accountant to explain his bank deposits.

At the June 7, 2019 hearing where the court made the challenged orders, Francisco did not request a continuance to allow him the opportunity to retain a forensic accountant. Even after Maria's attorney suggested during closing argument the need for a possible continuance to "really understand [Francisco's] economic circumstances," Francisco did not request more time. When the court indicated its readiness to make a finding regarding Francisco's income, Francisco's attorney objected to the court making an income finding on the ground that the matter had not been fully heard. Counsel never indicated, however, what more evidence Francisco would present, and never requested a continuance to hire a forensic accountant. This record does not support Francisco's claim that the family court denied him a meaningful adversarial process.

This record also provides important context for the family court's comments that Francisco's set-aside motion amounted to a new trial or an appeal. At the time of the hearing, the court had presided over the parties' dissolution for four years. Having handled the case from its inception, the court had a deep knowledge of the matter, including its discussions with counsel regarding Francisco's monthly income. The court impliedly rejected Francisco's professed surprise regarding its $10,000 monthly income finding based on its knowledge of the record, and instead made a finding that Francisco "had the opportunity to present evidence and he chose not to present evidence."

Accordingly, we reject Francisco's contention that the family court abused its discretion by denying him relief under section 473, subdivision (b), regarding his monthly income.

14

### 2.    *Attorney Fees Award*

In his set-aside motion, Francisco also claimed surprise when the court awarded over $56,000 in additional attorney fees to Maria, noting that Maria had only requested $5,000 in her July 24, 2018 RFO.  The record establishes that Francisco had notice of Maria's continuing request for a need-based contribution towards her increasing attorney fees.

In her July 24, 2018 RFO seeking a move-away order and an upward modification of guideline child support, Maria sought $5,000 in attorney fees.  In her August 2, 2018 responsive declaration to Francisco's July 18, 2018 RFO to modify the orders for parenting time, child and spousal support, Maria sought $37,874.55 in attorney fees.  In her January 2019 IED, Maria stated that she owed her attorneys $52,570.80 in fees.  In a February 2019 declaration from her attorney, Maria represented she had incurred $60,158.66 in attorney fees since July 18, 2017.

At the April 10, 2019 hearing, Maria's attorney raised the issue of attorney fees, stating that this issue "has yet to be ordered in this long proceeding, and I think perhaps it will create incentive to bring this to a close if we finally determine what the cost is going to be."  The court noted that Maria's attorney fees from July 18, 2018 to February 13, 2019 amounted to $60,115.66.

Francisco's attorney suggested releasing to Maria's attorney approximately $10,000 that he had received from selling the community home and suggested that the parties discuss what would be ordered at the conclusion of the matter.  The court found this proposal problematic because the matter had been pending since 2016 and "there's a lot of discussion about how much money [Francisco] has, that he has access to pay for attorney fees."  The court

15

later stated "[w]e have an agreement to release $10,000 to be paid for [Maria's] attorney fees."

After Francisco's attorney noted that Francisco had inherited money, the court stated that these funds were not available for support but were available for attorney fees. The court reiterated, "[w]e're agreeing to release this $10,000 until we can fully flesh these issues out" and stated that additional attorney fees would be awarded "pending further proceedings where we're going to flesh out more of [Maria's] ability to have access to counsel and to pay fees." Francisco's attorney never objected to Maria's continuing request for attorney fees but asked for additional time to allow his client to liquidate assets.

In a May 2019 declaration, Maria's attorney stated that, after entry of judgment in March 2017, Maria had incurred over $80,000 in attorney fees. At the May 9, 2019 hearing, Francisco's attorney expressed his understanding that Maria had an ongoing request for attorney fees and that Maria's attorney "made very clear . . . he's going to keep attempting to get attorney fees every time he can which is his prerogative." When the court turned to attorney fees, Maria's attorney argued that his client should "receive every penny" in attorney fees that she paid, stating that attorney fees to date amounted to $84,098.36. After a discussion regarding attorney fees awards to Maria to date, the court confirmed that Maria would be seeking an additional $64,000 attorney fees award. At the end of the hearing, the court ordered that Francisco pay an additional $15,000 to cover Maria's attorney fees and stated that a final determination regarding attorney fees would be made on May 31 "at which time we will have a complete, as clear as reasonably possible picture of the financial condition for the court to make an analysis of the ability to secure fees."

16

At the June 7, 2019 hearing, Maria's attorney stated that: "Francisco's income profile is not a simple matter. It is a constantly evolving position that I believe I can demonstrate is false." Maria's attorney expressed his preference that the court make an order on attorney fees. The court indicated its readiness to make findings regarding Francisco's income and attorney fees. The court found that Francisco failed to overcome its determination that he had at least $10,000 in monthly income. After finding that Francisco caused the majority of litigation costs based on his inability or failure to present evidence without being compelled, the court ordered Francisco to pay Maria another $55,000 in need-based attorney fees pursuant to Family Code section 2030.

This record shows that Maria did not limit her potential attorney fees award to the $5,000 pled in her July 24, 2018 RFO and that Francisco knew Maria would be seeking additional attorney fees up to $64,000. Accordingly, Francisco failed to carry his burden of demonstrating a basis for relief from the attorney fees award under section 473, subdivision (b).

In summary, the family court did not err in denying Francisco's motion for relief under section 473, subdivision (b).

II.

*Francisco Failed to Show a Procedural Due Process Violation*

" 'In a contested proceeding, no court may render judgment without conforming to the constitutional guarantees which afford due process of law. [Citation.] Due process requires that all parties be notified of the facts and issues in dispute, that each party be afforded a fair opportunity to present evidence in open court, and that judgment be rendered based on an evaluation of the evidence on each side, findings of fact and conclusions of law.' " (*Carr v. Kamins* (2007) 151 Cal.App.4th 929, 936.) What constitutes procedural due

17

process is not absolute. (*In re Matthew P.* (1999) 71 Cal.App.4th 841, 850.) "Due process is a flexible concept which depends upon the circumstances and a balancing of various factors." (*In re Jeanette V.* (1998) 68 Cal.App.4th 811, 817.) We independently consider whether the proceedings below complied with the constitutional guarantee of procedural due process. (*Conservatorship of Christopher A.* (2006) 139 Cal.App.4th 604, 609–610.)

As an additional ground for relief, Francisco claims the attorney fees award violated his right to procedural due process because Maria's July 24, 2018 RFO indicated that she sought a $5,000 attorney fee award and he believed this sum was the maximum fee award that could be assessed against him. He notes that Maria never amended her RFO to request a higher amount and claims she did not provide him with notice that his legal exposure would exceed $5,000.

Although Francisco correctly states that Maria never amended her July 24, 2018 RFO to request an attorney fees award exceeding $5,000, he ignores that Maria's August 2, 2018 response to his RFO requested $37,874.55 in attorney fees. The record also shows Francisco had notice that his legal exposure could exceed $5,000. In a February 2019 declaration, Maria's attorney alerted Francisco that Maria had incurred $60,158.66 in attorney fees since July 18, 2017. At the April 10, 2019 hearing, Francisco did not contest the court's belief that money Francisco inherited could be used to satisfy an attorney fees award to Maria, nor did he object to Maria's continuing request for attorney fees. At the May 9, 2019 hearing, Francisco's attorney expressed his understanding that Maria had an ongoing request for attorney fees.

The law supports the understanding of Francisco's attorney. A family court has express authority to "inquire into and render any judgment and make orders that are appropriate concerning . . . [t]he award of attorney fees

18

and costs." (Fam. Code, § 2010, subd. (f).)  The court is empowered to order the payment of fees and costs as between the parties, based on their "relative circumstances" to ensure a parity of legal representation in the action.  (Fam. Code, §§ 2030, 2032.)  Maria requested an additional attorney fees award in both her declaration in support of her July 24, 2018 RFO and her August 2, 2018 response to Francisco's RFO based on the "disparity" in their incomes.  Subdivision (c) of Family Code section 2030 explicitly provides:  "The court shall augment or modify the original award for attorney[ ] fees and costs as may be reasonably necessary for the prosecution or defense of the proceeding, or any proceeding related thereto, including after any appeal has been concluded."  Thus, it is well established that " '[n]eed-based awards may be *augmented* or *modified* as necessary during the entire pendency of the case, consistent with the parties' "relative circumstances." ' " (*In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1056.)

Moreover, at the conclusion of the proceeding, the court has a duty "to make a just and reasonable award of attorney fees and costs, considering the circumstances of the parties." (*In re Marriage of Green* (1992) 6 Cal.App.4th 584, 593.)  An attorney fees award in a dissolution proceeding is left to the sound discretion of the trial court.  (*In re Marriage of Sullivan* (1984) 37 Cal.3d 762, 768.)  Here, the record shows Francisco had notice of Maria's continuing request for attorney fees and an opportunity to object to those fees.  On this record, we discern no due process violation.

## DISPOSITION

The June 1, 2020 FOAH denying Francisco's set-aside motion under section 473, subdivision (b), is affirmed.

DO, J.

WE CONCUR:

McCONNELL, P. J.

BENKE, J.